JAICKS v. MARTHA G. MERRILL, Appellant.

Division Two, December .22, 1906.

1. **TAXBILLS: Kansas City: Signed by Authorized Person: Clerical Work.** The charter provided that "all special taxbills provided for by this charter shall be made out and certified by the president of the Board of Public Works, or in his name by any person by the Board of Public Works thereunto specifically authorized by resolution in writing and recorded in books to be kept by such Board of Public Works, and signed by the president of the board," and the board by resolution, recorded in a book kept by it, signed by the president, authorized Edward B. Silkwood, who was chief clerk in the Engineer's Department, "to stamp the name of T. M. Spofford, president, by him, to all special taxbills that may be issued in payment for public works done in Kansas City, Missouri." *Held*, that the taxbills were not void because the signature of the president of the board was signed by Silkwood, nor does a reasonable construction of the charter require the president, with his own hand, to do all the clerical work of making out the taxbills.

2. ———: ———: ———: ———: **Delegation of Authority.** A requirement that the arithmetical work of apportioning the total cost to the several lots benefited by the improvement be done by the clerks in the City Engineer's office, was not a delegation to those clerks of the authority of the Board of Public Works or of the City Council, under a charter which required the board to "apportion, or cause to be apportioned, .the cost of said improvement and issue taxbills therefor" upon approval by the City Council of the recommendation of the Board of Park Commissioners, etc.

3. ———: **Installment: Unpaid: Maturity of Remainder: Pleading.** All the pleader is required to do is to make a plain and concise statement of the facts which constitute the cause of action; it is not necessary to plead evidence. Where the charter provided that upon default in the payment of any installment of taxbills, all remaining installments should immediately become due, it is only necessary to charge that the particular taxbill is now due and unpaid, and it is not necessary to charge that they are due and unpaid because of default in the payment of the first installment.

4. ———: **Unpaid Installments: Proof.** Where there is no plea of payment and the taxbills themselves on their face show that some installments were due and unpaid when suit was brought,

there is no need for specific proof that the remaining install-ments were due and unpaid, in view of the provisions of the charter that upon default in the payment of some installments all shall become due. In such case if the first installments have been paid, that is a matter of affirmative defense.

5. ————: Charter Provisions: Compelling Council to Adopt Re-commendations of Board: Constitutionality. The charter pro-vided that if the Board of Park Commissioners recommended to the Common Council that certain improvements of boule-vards be done, it shall be the duty of the Council by ordinance to order the work to be done, in which case the Board of Pub-.lic Works shall apportion the cost of the work and issue spe-cial taxbills, "in the same manner and with the same effect as the cost of similar work is apportioned upon streets not under the control" of the Park Board; and the Council ac-quiesced in the recommendation of the Park Board. *Held*, that the charter provision confers no power on the Park Board to legislate, and whether or not the Council could be compelled to adopt the board's recommendations is not in the case, since it did adopt the recommendation of the board.

6. ————: Indorsement of Recommendation: General and Special Provisions. Where the charter provides that "no resolution or ordinance" for the improvement of a street "shall be passed except upon the recommendation of the Board of Public Works indorsed thereon," and another charter provision places the improvement of roads, parkways and boulevards in the park districts under the control of the Board of Park Commissioners and provides that the Council "upon the recommendation" of said board shall provide for the improvement, the first provision is general and the other an exception thereto, and both can stand, and a failure of the Board of Public Works to indorse the recommendation of the Park Board, for an improvement, in the park district, is not fatal to the taxbills.

7. ————: Grade: In Park District: Indorsement. Under the cir-cumstances of this case, it is held that the taxbills are not invalid because the recommendation of the Park Board to pave a street in the park district did not contain "the certificate of the Board of Public Works that the grade proposed to be established conformed to the system of grades established by said board."

8. ————: Contract: Indefiniteness. The property-owner, if he wishes to have the taxbills declared invalid on the ground that its provisions and specifications were so vague and indefi-nite, as to the manner and extent of the work to be done, as to shut out the competitive bidding required by the charter, should plead such matters, for they are matters of affirmative defense.

9. ———: ———: ———: **No Objection: While Work Progresses.** The property-owner who stands by and sees the street improvement go on and makes no objection to the provisions and specifications contained in the contract or that there was a defect in the proceedings, and takes no step to stop the work, can not, after it is completed, defeat the contractor in his suit on the taxbills, on those grounds.

Appeal from Jackson Circuit Court.— *Hon. W. B. Teasdale,* Judge.

AFFIRMED.

*Johnson & Lucas* for appellant.

(1) The special taxbills sued on are void and should not have been received in evidence, because they were not made out by the president of the Board of Public Works nor by a person thereunto specially authorized by the board of Public Works. Art. 9, sec. 15, Kansas City Charter; Warren v. Ferguson, 108 Cal. 535; Stifel v. Cooperage Co., 38 Mo. App. 340; City of Sedalia v. Donohue, 190 Mo. 408. Plaintiff was required to allege and prove the due execution of the special taxbills sued on, to entitle him to introduce them in evidence or to recover thereon. Reccius v. City of Louisville, 66 S. W. 410; City of Louisville v. Kimmel, Id. 608; Miller v. Wells, 5 Mo. 6; Stifel v. Southern Cooperage Co., 38 Mo. App. 340; Eyermann v. Payne, 28 Mo. App. 78; Warren v. Ferguson, 108 Cal. 535; Young v. Clarenden Township, 132 U. S. 340. (2) The third and fourth installments of the special taxbills were not due and payable on their face when this suit was filed, and though this suit was authorized by the Kansas City charter on proof of a default of payment on the first or second installment, yet no proof of this default was offered; hence, the finding should have been for defendant on the first, fourth, fifth and eighth counts of the petition. Kansas City Charter, art. 9, sec. 23; Shearer v. Corbin,

1 McCrary, 306; Haegel v. Mallinckrodt, 46 Mo. 577; Gregg v. Jessberg, 113 Mo. 144. (3) Section 17 of article 9 of the State Constitution gave to the mayor and council of Kansas City all of the discretion as to what public highways therein should be improved and how they should be paid for, and therefore nullifies section 31 of article 10 of the Kansas City charter, which transfers this discretion to the Board of Park Commissioners. Neil v. Gates, 152 Mo. 594. (4) The city ordinance No. 9440, ordering the alleged work, as a proceeding under article 9, section 2, of the Kansas City Charter, is unauthorized and void, because no recommendation of the Board of Public Works is endorsed thereon. Perkinson v. McGrath, 9 Mo. App. 26; St. Louis v. Gleason, 89 Mo. 67. (5) The finished surface of the alleged public improvement was not brought to the grade of a lawful city ordinance. Brady & Kirby v. Rodgers, 63 Mo. App. 222. (6) The contract for this improvement is void, because its provisions and the specifications, on which it was let, are too vague and indefinite in the description of the materials, manner and extent of the work to admit of the competitive bidding required by the Kansas City charter (Art. 17, sec. 12) and by the ordinance No. 6567. Packard v. Hayes, 94 Md. 233; Coggeshell v. Des Moines, 78 Iowa 235; Piedmont Paving Co. v. Allman, 136 Cal. 88; Chippewa Bridge Co. v. Durand, 122 Wis. 85. (7) The special taxbills sued on are unauthorized and void, because the contract delegates to the Board of Park Commissioners authority to determine the manner and extent of the work. Stansubury v. White, 121 Cal. 433; Grant v. Barber, 135 Cal. 188; Chase v. Shearer, 136 Id. 248; City of Bluffton v. Miller, 33 Ind. App. 521; Lundberg v. City, 183 Ill. 572; Bradford v. City, 165 Id. 612; De Witt Co. v. City of Clinton, 194 Id. 521; Hyde v. Joyes, 4 Bush (Ky.) 464; Neill v. Gates, 152 Mo. 586. (8) Defendant is not

estopped to make any of the stated defenses to the special taxbills: First. Because these defenses go to the very ground-work of the proceedings. Perkinson v. Hoolan, 182 Mo. 189; Collier Est. v. Western P. & S. Co., 180 Mo. 364. Second. Because there is no proof that the defendant knew of any of the objections here made to the special taxbills before or during the alleged work. Perkins v. McGrath, 9 Mo. App. 26; Keane v. Klansman, 21 Id. 485; Galbraith v. Newton, 30 Id. 380; City of St. Joseph v. Dillon, 61 Id. 317; Verdin v. St. Louis, 131 Mo. 99. Her own testimony was positively to the contrary.

*T. B. Buckner* for respondent.

Appellant having had personal knowledge of the work being done, and of the passage of the ordinance, having stood still until the contractor had expended his money and finished his work in direct accordance with his contract, is now estopped to plead any of the irregularities relied upon and raised by her in this case. Supposing or admitting some of the objections complained of are irregular, they are not such as will invalidate the taxbills sued on. It is only such defects as affects the substantial rights of the property-owner which will render the taxbills void. Shehan v. Owen, 82 Mo. 464; Ross v. Stackhouse, 114 Ind. 200; Cole v. Strainka, 105 Mo. 309; Morse v. City of Westport, 110 Mo. 502; Johnson v. Duer, 115 Mo. 381; Gibson v. Owen, 115 Mo. 269; Warren v. Barber Paving Co., 115 Mo. 580; Herman on Estoppel, sec. 1221; Barber Pav. Co. v. Edgerton, 125 Ind. 455; Clements v. Lee, 114 Ind. 399; Pretzinger v. Harness, 114 Ind. 498. On the question of estoppel, see Planet Property Co. v. Railroad, 115 Mo. 613; Hellencamp v. City of Lafayette, 30 Ind. 192; Palmer v. Stumpf, 26 Ind. 329; Lafayette v. Fowler, 34 Ind. 146; Gibson v. Owen, 115 Mo. 258; Ritchie v. South Topeka, 38 Kan. 374; Warren v. Barber As-

phalt Paving Co., 115 Mo. 580; Traphagen v. Mayor, 29 N. J. Eq. 209; Elliott on Roads and Streets (2 Ed.), sec. 590; Heman v. Ring, 85 Mo. App. 231; Barber Asphalt Pav. Co. v. Hezel, 76 Mo. App. 135, 155 Mo. 391.

GANTT, J.—This is an action on special taxbills for macadamizing Benton boulevard from Independence boulevard to Fifteenth street in Kansas City, Missouri, under an ordinance of said city numbered 9440, approved March 14, 1898, said special taxbills being numbered 9 and 12, and issued in installments. The improvement for which these taxbills were issued was conducted by the Park Board of Kansas City, for the changing of Walrond avenue, a street in Kansas City, into Benton boulevard. The case came on for hearing at the April term, 1903, of the circuit court, before Judge Teasdale, one of the judges of said court, and the jury was waived, and after the hearing of the evidence the court rendered judgment for the plaintiff, awarding the plaintiff a lien upon the adjoining lots of the defendant. In due time a motion for a new trial was filed, heard and overruled, and the defendant appealed to this court. Inasmuch as the defendant challenged the constitutionality of section 31 of article 9 of the Kansas City Charter, the appeal is properly in this court.

The evidence tended to prove that on the 18th of June, 1899, the Board of Park Commissioners of Kansas City advertised for bids for building the roadway and macadamizing Benton boulevard, for which work the taxbills in suit were issued. On the 3rd day of August, 1899, the contract for this work was awarded to the plaintiff. After the contract was let to him, the Board of Park Commissioners sent an ordinance to the Common Council asking that said contract be confirmed. This ordinance was referred by the Council to the Public Improvement Committee, and was passed

by the Council about the 10th or 12th of October, 1899. Soon after said contract was confirmed, the plaintiff commenced the work and continued the same uninterruptedly until finished. The work was finished within the time named in the contract and the taxbills therefor were issued on the 30th day of June, 1900, and were delivered to the plaintiff and receipted for by him on the taxbill register on the 2nd day of July, 1900. The kind and quality of material named in the contract was furnished by the plaintiff. After a careful examination and reading of the whole record, we can find no objection made by the defendant that the work was not completed in all respects as plaintiff had undertaken and agreed to do by his contract, nor that it was not completed within the time mentioned therein. No evidence was introduced that the price charged was unreasonable. The errors complained of are those alleged to have been committed by the Park Board and the city authorities. These alleged errors will be considered in connection with the assignments of error on this appeal.

I. It is insisted that the special taxbills sued on are not shown to have been made out and executed by the officials of the city as provided by the city charter. The charter of Kansas City was adopted and became operative May 9, 1889, pursuant to the power conferred by section 16, article 9, of the Constitution of Missouri, upon cities having a population of more than one hundred thousand inhabitants. By section 31 of article 10 of the charter it is provided: "The Board of Park Commissioners shall have power to cause any road, parkway, boulevard, or avenue, or part thereof, which may be under its control or management, to be graded, regraded, paved, repaved, guttered, reguttered or otherwise improved or repaired, including the construction and repair of bridges, viaducts and side-

walks in such manner and at such times and with such
material as said board may determine, and may pay
for such work or improvements or any part thereof out
of the funds not otherwise appropriated belonging to
the park district in which such work or improvement
is made, or out of the general park fund; *provided,*
however, that if the Board of Park Commissioners
shall recommend to the Common Council that any such
work to be done and the payment of the whole, or any
portion thereof, be made in special tax bills, it shall be
the duty of the Common Council, by ordinance, without
petition of the property-owners therefor, or right of re-
monstrance, to order such work to be done, in which
case the Board of Public Works of said city shall ap-
portion, or cause to be apportioned, the cost of said
work of improvement and issue special taxbills there-
for, or for any portion thereof so ordered to be paid in
taxbills, in the same manner and with the same effect
as the cost of similar work or improvements is appor-
tioned, and taxbills in payment therefor issued, in such
city for public improvements upon streets not under
the control or management of such Board of Park
Commissioners: *Provided,* further, that when any
parkway or boulevard has been constructed, paved,
guttered and otherwise improved at the expense of the
adjoining property, such parkway or boulevard shall
thereafter be maintained at the expense of the park
district in which the same is situated, or out of the gen-
eral park fund. The contract for doing the work of
construction and furnishing material for any such im-
provement shall be let by the said Board of Park Com-
missioners in such manner as shall be provided by ordi-
nance; and such work shall be done under the super-
vision and control of the Board of Park Commission-
ers.''

It is insisted first that the taxbills in this case were
not made out and issued as provided in the Kansas

City charter, article 9, section 15, of the charter, which provides: "All special taxbills provided for by this charter, shall be made out and certified by the president of the Board of Public Works, or in his name by any person or persons by the Board of Public Works thereunto specially authorized by resolution in writing and recorded in books to be kept by such Board of Public Works, and signed by the president of the board." The plaintiff in support of his case offered resolution No. 485 of the Board of Public Works in words as follows: "On motion the board adopted the following resolution: Whereas, it being necessary that the Board of Public Works authorize the chief clerk of the Engineer's Department to stamp the name of the president of the Board of Public Works on all special taxbills, therefore, be it resolved by the Board of Public Works in regular session assembled that Edward B. Silkwood is hereby authorized to stamp the name of T. M. Spofford, president, by him, to all special taxbills that may be issued in payment for public work done in Kansas City, Missouri." Mr. Silkwood testified that on the 3d of June, 1900, he was chief clerk of the Engineer's Department, and he had general supervision of the office and of apportioning taxbills and of signing taxbills. The taxbills sued upon were shown to the witness and he testified that he signed the name of T. M. Spofford, president of the Board of Public Works, to these taxbills, "by Edward B. Silkwood." And he produced the record of the receipt of the plaintiff for these taxbills in the following words: "Kansas City, Missouri, July 2, 1900. Received this day the above-mentioned taxbills amounting to the sum of $35,846.57, the same being payment in full of all claims against the city of Kansas City, Missouri, on account of the above-mentioned work. Andrew Jaicks, contractor;" that the taxbills numbers 9 and 12 sued on in this case, were included in the above receipt, num-

ber 9 being a taxbill against the east thirty feet of lot 32 Windsor, $678.22, and number 12 being against the east thirty feet of lot 41 same addition, $625.04. The record showed further that this was a register of special taxbills issued to Andrew Jaicks, contractor, for paving, macadam paving, on Benton boulevard from Independence boulevard to Fifteenth street, by ordinance 9440, approved March 14, 1898. He testified further that a clerk in the engineer's office, by the name of Stevens, he thought, delivered those taxbills to plaintiff, but he was not positive who did it. The handwriting, he thought, was Mr. Stevens's, that the taxbills were made out by clerks in the office, that witness made the apportionment of the taxes to the different lots and the clerical work of making out the bills was performed by other clerks in the office and the receipts were kept in the City Engineer's office and the record was kept there. Thereupon the plaintiff introduced his taxbills and rested.

The contention of counsel for the defendant that these taxbills are void because the signature of the president of the Board of Public Works was signed by Mr. Silkwood, we think is untenable. The charter itself, section 15, article 9, provides the special taxbills should be made out and signed by the president of the board, or in his name by any person by the board specially authorized by resolution in writing, to do so. The resolution of the board authorized Mr. Silkwood, the chief clerk in the Engineer's Department, to stamp the name of the president on all special taxbills. The taxbill is certified by the Board of Public Works in the name of its president by Mr. Silkwood, and this is a substantial compliance with the charter provision. A reasonable construction of the charter, we think, does not require the president of the Board of Public Works, with his own hand, to do all the clerical work of making out these special taxbills, but when they were issued as

these were, by authority of the Board of Public Works, and signed by its president by the party specially authorized by the resolution of the board, all the substantial requirements of the charter were complied with.

The decision of this court in City of Nevada to use v. Eddy, 123 Mo. l. c. 563, 564, in no sense conflicts with the conclusion herein reached. In that case the council never did determine whether the work should be done with one character of material or another as the law required, but attempted to delegate its duty to the clerk to make the assessments without the sanction of law. In this case the Common Council of the city, upon the recommendation of the Park Board, determined the material and provided the specifications, and the contract was let to the lowest bidder and the work was performed in strict conformity to the contract and accepted by the board and the city, and the mere arithmetical work of the apportionment of the total cost to the several lots abutting on the improvement, by the clerks in the City Engineer's office, was in no sense a delegation of the authority of the board and council to those clerks.

II. As to the second proposition advanced, that the third and fourth installments of the taxbills sued on were not due and payable when the suit was commenced, to-wit, May 31, 1903: The charter provides in section 23 of article 9, "If any installment of any such taxbills or interest thereon, be not paid when due, then all the remaining installments shall immediately become due and collectible."

It is conceded by the defendant that in the first count of the petition, which is the suit on the fourth installment of taxbill number 12, it is alleged, "that default had been made on the first installment by reason of which the same had become due and that the same is now due and unpaid," and that the fifth count of the petition on the fourth installment of taxbill num-

ber 9 contains the same allegation, but it is said that the fourth and eighth counts do not make this allegation, but a reference to the fourth and eighth counts will show that the plaintiff alleges that the "same are now due and unpaid." Under our system of practice, all that the pleader is required to do is to make a plain and concise statement of the facts, which constitute his cause of action, and it is not necessary for him to plead his evidence. By the allegation that these installments mentioned in the fourth and eighth counts were due and unpaid, the plaintiff tendered the issue of their maturity, and it was perfectly competent for him to show that by the charter provision these installments became due on account of the default in the payment of the first.

As to the proposition advanced by the learned counsel that there was no evidence tending to prove that there had been a default in the payment of the first and second installments, we are moved to say that it is no easy task to dig out exactly what issues were tendered by the answer of the defendant outside of the assault on the constitutionality of section 31, article 10, and the attack upon ordinance 9440, because of the failure of any recommendation of the Board of Public Works indorsed thereon, but it is clear that there is no plea of payment of either of the installments in the two taxbills, and the taxbills themselves on their face show that the first and second installments were due when the suit was filed. When the plaintiff had established the genuineness of the taxbills and the receipt therefor by the plaintiff, he had established a prima-facie case under the charter and the bringing of his action was sufficient demand therefor. By this prima-facie case he had established not only the validity of the bill and the doing of the work and the furnishing of the material charged for, but that the same was still due and unpaid, and his evidence had estab-

lished that the first and second installments were due and unpaid, and this under the charter rendered all the remaining installments also due and collectible. If either of the first installments had been paid this was a matter of affirmative defense. [Wilkerson v. Farnham, 82 Mo. 1. c. 678.]

We think the court properly denied the declaration of law number 2, requested by the defendant, not only upon the general principle of pleading already adverted to, but because of the frame of the answer and the issues tendered therein, which in effect amount to a plea of confession and avoidance, to-wit, that the plaintiff had done the work under and by virtue of an ordinance and contract with the city, but that the ordinance was void and the city authorities had no power to issue the taxbills and make them a lien upon defendant's property, and not that the plaintiff was not the owner of the taxbills, nor that they were not due and unpaid.

III.  We are thus brought to one of the principal, if not the most important, contention of the defendant, to-wit, that section 31 of aricle 10 of the Kansas City charter is in conflict with sections 16 and 17 of article 9 of the Constitution of this State.  This section 31 has already been set out in full hereinbefore.

Section 31, supra, provides in short that the Board of Park Commissioners shall have the power to grade, pave and otherwise improve and repair any parkway or boulevard under its control and pay for the same out of funds belonging to the park district in which such work or improvement is made, and then provides that if the Board of Park Commissioners shall recommend to the Common Council that such work be done and the payment made in such taxbills, it shall be the duty of the Common Council by ordinance to order such work to be done, in which case the Board of Public Works of the city shall apportion the cost of said work and

issue special taxbills in the same manner and with the same effect as the cost of similar work is apportioned and taxbills issued in payment therefor for public improvements upon streets not under the control of the Park Board. The contention is that this section of the charter excludes all discretion in the Common Council to decide upon the necessity for the manner of constructing such boulevard improvements, whereas sections 16 and 17 of article 9, providing for the government of cities of over one hundred thousand inhabitants by a freeholders' charter, provide that it should be a feature of such charters that they shall provide among other things for a mayor or chief magistrate and two houses of legislation.

In Albright v. Fisher, 164 Mo. 56, it was held by this court that when the Municipal Assembly of the city of St. Louis is engaged in the performance of its legislative functions, it is beyond the power of the courts to interfere with the exercise of those functions in any manner whatever, whether by enjoining the passage of an ordinance or by mandatorily compelling the presiding officer of either house to make that an ordinance which was not an ordinance theretofore by appending his signature thereto, and this is based upon the fundamental law of the State creating the two houses of the Municipal Assembly legislative bodies. By reference to section 31 of article 10 of the Kansas City charter again it will be observed that it only authorizes the Park Board to recommend to the Common Council that a boulevard or other improvement shall be made and the payment made by issuing special taxbills, and it then devolves upon the Council by ordinance to provide for the doing of such work and the payment for the same in taxbills as in cases where the Council itself provides for the improvement of streets not under the control of the park board. In this case it appears that the Council acquiesced in the recom-

mendation of the Park Board and duly passed an ordinance for the improvement of the Benton boulevard, so that the question whether the council was compelled to adopt the board's recommendation and whether, if it had not, it could have been compelled by mandamus to do so, is not involved in this record. Reading the whole of section 31 together, it is clear that it confers no power on the Park Board to legislate, but simply gives it a power to recommend, and it is equally clear that until and unless the Municipal Assembly or Common Council passes the necessary legislation no boulevard can be improved and paid for by special taxbills, but it is equally clear in Albright v. Fisher, 164 Mo. 56, and various other decisions of this court, that a mandamus would not lie to compel them to pass an ordinance providing for the improvement of the boulevard in question, and to pay therefor in special taxbills, because such action is necessarily a legislative one. As was said in Kansas City v. Bacon, 147 Mo. l. c. 283, it will be ample time to pass upon the question as to whether the Council are bound to follow the Park Board's recommendation, when that question arises. But so long as the Park Board merely makes a recommendation and the Common Council exercises its unquestioned charter power to adopt the recommendation and provides for the improvement of a boulevard by a duly-enacted ordinance, we are clear that the Constitution of the State is in no manner infringed.

IV. It is next insisted, however, that the city ordinance number 9440, under which the work for which the taxbills in this case have been issued, was done, is void, because no recommendation of the Board of Public Works was indorsed thereon, and this contention is predicated upon section 2 of article 9 of the charter, which provides "that the city shall have power to cause to be graded, constructed, paved, etc., streets and alleys, sidewalks and public highways and pay there-

for by issuing special taxbills,'' and further ''that no such resolution or ordinance shall be passed by the .Common Council except upon the recommendation of the Board of Public Works indorsed thereon,'' and as it is conceded in this case that no such recommendation from the Board of Public Works was indorsed on ordinance 9440, the ordinance is void. The question then arises whether there is such an irreconcilable conflict between section 2 of article 9 and section 31 of article 10 of the charter that both cannot stand. It is well to note that each of these provisions is found in the charter and each prima-facie of equal dignity. The universal rule of construction in such cases is that full effect shall be given to each if possible. And when this is done, it will be observed that section 31 of article 10 applies solely to the improvement of roads, parkways and boulevards in the park districts under the control of the Park Board, whereas section 2 of article 9 of the charter is a general provision for the government of the Common Council as to all streets and public highways in the city. As to the parkways in the park districts the charter provides for the recommendation of the Board of Park Commissioners, whereas as to all streets other than those in the park district the recommendation of the Board of Public Works is required. So that it will appear that the latter is a general provision and section 31 of article 10 is a special one applicable alone to a boulevard or parkway under the supervision of the Board of Park Commissioners, to be constructed and paid for by special taxation.

In Ruschenberg v. Railroad Company, 161 Mo. 70, where there was an apparent conflict between two articles of the St. Louis charter in regard to the speed of street railways, it was said: ''Where two charter provisions, one of which is special and particular and certainly includes the matter in question, and the other

general, which if standing alone would include the same matter and thus conflict with the special act, or provision, especially when such general and special acts or provisions are contemporaneous, the special act must be taken as intended to constitute an exception to the general act or provision and not a repeal. [Crane v. Reeder, 22 Mich. l. c. 334; State ex rel. Lutfring v. Goetze, 22 Wis. 363; Long v. Culp, 14 Kan. 414; Sutherland on Stat. Cons., sec. 217.]''

When it is considered in this case that there is absolutely no conflict whatever between section 31 of article 10 and section 2 of article 9 in regard to the power of the Common Council to cause the street or boulevard to be improved and paid for in special taxbills, save and except that in the one case the Council has a recommendation from a Board of Park Commissioners and in the other the recommendation of the Board of Public Works, there is no sound reason why both of the provisions may not stand and the special provision as to the park boulevards and highways be treated as an exception to the more general provisions of section 2 of article 9.

V.  The fifth assignment of error is that the taxbills are void because the finished surface of the street improvement in question as completed by the plaintiff, was not established by or according to any lawful ordinance of the city. To authorize this provision, we are referred to section 36 of article 17 of the charter, which provides that, ''no ordinance establishing or re-establishing the grade of any street, avenue or alley, shall be passed by the Common Council, unless there is indorsed thereon a certificate in writing of the Board of Public Works that the grade purposed to be established or re-established by such ordinance conforms to the system of grades established by said board.'' It appears from the evidence that the Benton boulevard grade was established in conformity to ordinance 8881.

Prior to the passage of that ordinance, however, Benton boulevard was known as Walrond avenue from Independence avenue to Fifteenth street with the exception of four blocks from Seventh to Eleventh. The street before it was paved was graded in conformity to ordinance 8881; after that it was paved to the grade established by that ordinance. This ordinance, like 9940, was passed upon the recommendation of the Board of Park Commissioners, and not that of the Board of Public Works.

The learned counsel for the defendant says that if section 36 of article 17 applies to boulevard improvements it renders ordinance 8881 void. The ordinance under which this work was done, 9940, was an ordinance simply to pave this street; that street had been previously graded by an ordinance of the city in strict conformity with section 31 of article 10 of the charter, and that provision of the charter is not in conflict with section 36 of article 17. It would work a gross injustice to a contractor to permit him to furnish material and labor and construct a street pavement on a street graded by the city authorities, to which grade no objection had ever been taken by any property-owner along the street, or the validity ever questioned in any manner, and then defeat his taxbill on that ground. We can find no merit whatever in this contention of the learned counsel.

VI and VII. Treating these two propositions as one, as the counsel have, it is sufficient to say that he assails the contract as void because its provisions and specifications were too vague and indefinite in the description of the materials, manner and extent of the work to admit of a competitive bidding required by the Kansas City charter. As to this objection, it is sufficient to say that the defendant in her answer admits that this work was done by the plaintiff under and pursuant to the ordinance 9440, and the standard specifica-

tions therein referred to, which were then on file in the office of the Board of Park Commissioners at the city hall in Kansas City. We have examined these specifications and we find nothing in them to sustain the objection of the defendant. The answer nowhere pleads wherein they are defective or misleading, or wherein they were too indefinite to admit of competitve bidding, and lays no foundation for the various objections alleged in the brief of the counsel. All these matters were such as required affirmative defenses, but there was no pretense of any proof showing that the price at which the work was let was an unreasonable one, or that the work was not done strictly according to the contract. It would serve no good purpose to take up each of the objections now urged for the first time to the specifications, but it must suffice to say that we have carefully gone through each one of them, and in our opinion they furnish no defense to plaintiff's action on the taxbills. The defendant herself testified that she saw this work going on from the time it commenced until it was completed. She knew the street was being paved, and never at any time notified the contractor that there was any defect in the proceedings and took no steps to stop him. The propositions now advanced by her counsel under this last assignment do not pertain to the unconstitutionality of the ordinance under which the work was done, or to the power of the City Council to enact that ordinance, and in this connection, the language of Judge HENRY, speaking for this court in Sheehan v. Owen, 82 Mo. 464, 465, is very pertinent: "Property-holders cannot lie by and see the work progress to completion without any effort to stop it, and then defeat the contractor in his suit on the taxbills on such a plea as this. . . . The work has been done by plaintiff. No complaint is made that it is not done according to the contract, or that plaintiff is in any manner charged with notice of alleged irregular-

ities in the proceedings of the Council or the acts of the city officials, and while there may have been some irregularities, the ordinance was substantially complied with by the city authorities and nothing done or omitted which could possibly have affected injuriously the interest of the defendant or other property-holders, and we are not inclined to turn a plaintiff out of court who has given his time and expended his money in the improvement of their property, on mere technicalities which in no manner affect the substantial rights of the parties.'' In Warren v. Barber Asphalt Paving Co., 115 Mo. l. c. 580, this court said: ''In the performance of duties in which discretion is lodged with the governing authorities of a city, we think objections to the methods adopted by them, which are within such discretion, should be made before the work is done, unless fraud or collusion is shown. It would be unjust to a contractor who has completed an improvement in full compliance with the contract awarded him by the Board of Aldermen, which is within the general powers conferred upon it, to refuse payment for the single reason that the courts may conclude that the means or methods adopted by the board were not the best or cheapest. If contracts could be vacated for such reasons, all security to contractors would be destroyed, and the cost of improvements necessarily increased, in order to insure against such contingencies.''

After a patient examination of all the propositions advanced for the reversal of this case, we are of the opinion that none of them are tenable, and that the judgment of the circuit court was for the right party, and it is accordingly affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.