## SHIPMAN vs. THE STATE.

*(1-5) Pleading. (6-10) Liabilities and duties of an architect and building superintendent.*

1. In view of the admissions and denials of the original answer herein, and of the judgment of this court on demurrer to the complaint (42 Wis., 377), proposed amendments to the answer, denying plaintiff's performance of his contract as building superintendent of the Northern Hospital, alleging his discharge by the building commissioners and their reasons for it, and traversing the reasons assigned in the complaint, are rejected as immaterial or redundant.

2. In an action for moneys alleged to be due on contract, with admission of part payment, defendant may plead a payment in excess of that admitted; but the answer of payment, partial or total, should plead the *amount* paid, and not merely that plaintiff has been fully paid *as to one* or all of the items of his demand, especially where the amount payable is dependent upon another amount, also traversable.

3. The complaint stating a cause of action in plaintiff's favor for five per cent. of the cost of construction of the Northern Hospital to the time of his discharge from the superintendence of its construction, and also for the actual value of his plans for the south wing (built after his discharge), a plea of payment for all his services to the time of discharge, and especially that he was paid five per cent. on the cost of the entire building except the south wing — such cost not being alleged in the answer, — is uncertain and evasive; it not appearing whether the averment is intended to cover the plans of the entire building, nor whether it claims a greater payment, or a less cost of the building, than is stated in the complaint.

4. Leave should not be given to amend an answer by inserting averments so framed that if they were in the original answer, the court would grant a motion by plaintiff to make them more definite and certain.

5. A denial that the state has ever refused to pay plaintiff his just claim, if any, does not traverse an averment of a presentation of plaintiff's claim to the legislature, and a refusal by that body to allow it.

6. It was not the duty of the "building superintendent" of the Northern Hospital, under sec. 9, ch. 39, Laws of 1870, to furnish the board of building commissioners, either monthly or on the completion of the buildings, "correct and accurate estimates" of materials put in the buildings by the contractors; monthly "estimates" upon construction contracts being in their nature mere approximations.

7. Though the building commissioners of said hospital might call to their aid, throughout, the skill of the building superintendent as an architect, and might probably have required him, upon the completion of the building, to inspect all its details and report to them whether or not they complied with the contract, yet it was the duty of the commissioners themselves, not only to procure a proper plan, and make a proper building contract, but to see that the building was completed according to such contract; and this duty they could not wholly devolve upon the superintendent.

8. The proposed answer avers by way of counterclaim, that plaintiff's specifications required a certain number of feet of iron coil to be placed in the north wing of said building; that plaintiff negligently certified to the building commissioners that the required quantity of coil had been put in, and that the commissioners, relying on his certificate, paid for it; that it was plaintiff's duty under his contract to know the quantity actually put in; that the commissioners did not and could not then know the fact; and that it came to their knowledge after plaintiff's discharge. It is not alleged that the commissioners required plaintiff to aid them in their action on the completion of the building; and the allegation as to plaintiff's certificate is understood to refer to his monthly estimates. *Held,* that the proposed averments do not show a valid counterclaim.

9. The proposed amendments allege that plaintiff put, or procured to be put, into said hospital building a defective heating apparatus, not such as his contract bound him to put in; and that, "by the contract and the specifications thereto attached," he was to procure to be put into or upon the building certain structures or fixtures of a specified character, but in fact put into or upon it certain others, of an inferior character. Plaintiff's contract with the commissioners (which is before the court in the pleadings) was merely to furnish plans, specifications and drawings, and to superintend the construction of the building. *Held,* that the averments do not state either defense or counterclaim.

10. Plaintiff, having contracted with the commissioners *as an architect*, may

be held to reasonable skill as such, both in planning the building and superintending its construction; and may be liable for defects in his plans or superintendence resulting from his lack of reasonable skill and diligence, notwithstanding the adoption of his plans by the commissioners, or a ratification of his superintendence by their acceptance of the building without objection, if the defects were patent to an expert, but latent to inexperts. And whether a failure of the commissioners in their duty would, under any or all circumstances, excuse a want of reasonable skill or diligence on plaintiff's part, is not determined.

After the decision of this court overruling a demurrer to the complaint in this action (42 Wis., 377), the attorney general filed an answer, October 30, 1877, admitting the contract alleged in the complaint, and the refusal of the legislature to allow plaintiff's claim upon presentation thereof, but denying all other averments of the complaint. The issues thus made were then sent to the Dane circuit court for trial; but afterwards, in March, 1877, by stipulation, the record was returned to this court; and the attorney general moved for leave to amend the answer. The character of the proposed amendments will sufficiently appear from the opinion. The motion was supported by affidavits tending to establish the facts alleged by the proposed answer.

*Alex. Wilson*, Attorney General, for the motion, argued that the court, on such a motion, would inquire into the merits of the amendments proposed no further than to see that they were not frivolous *(Turner v. Dexter*, 2 Cow., 555); that the boards of building commissioners and trustees of the Northern Hospital for the Insane were agents for the state, and their power to act for and bind it was limited by the statutes under which they acted; that the only power of the commissioners in reference to the matters included in their contract with the plaintiff was, " to procure plans, drawings and specifications for the buildings *necessary and proper for said institution*, the general features of which shall [should] be similar to the [then] present State Hospital for the Insane, with such modifications as experience may [might] dictate" (sec. 6, ch.

39 of 1870); that this only empowered them to procure such plans and specifications as would *answer the purpose for which they were designed*, and from which could be built a hospital for the insane *at least equal* to the one then existing at Madison; that they had no power to bind the state to pay for worthless or defective plans and specifications, or those which would not answer the purpose, or for which a hospital of the character just described could not be erected *(Mayor, etc., of Baltimore v. Reynolds*, 20 Md., 1; *Bowman v. De Peyster*, 2 Daly, 203; *Floyd Acceptances*, 7 Wall., 666; 1 Parsons on Con. (6th ed.), 125; Story on Agency, 307 a); that the rule that where a thing is ordered for a special purpose, and is supplied and sold for the purpose, there is an implied warranty that it is fit for that purpose (1 Parsons, 586, 588, and cases there cited), is applicable to such a case; that the statute itself required the heating apparatus for the proposed hospital to be " suitable apparatus," and the commissioners had no power to authorize any other to be procured or put into the building, while the proposed answer alleged that the plaintiff, as superintendent, procured to be put into the building heating apparatus that was grossly defective and practically worthless, and which had to be removed at great expense to the state; that other defects in the building are alleged to have been caused by plaintiff's negligent and unfaithful execution of the plans and specifications, and some of them not to have been discovered until long after his discharge; and that the defense and counterclaims based on these facts have never been waived by the state.

*Wm. F. Vilas, contra.*

RYAN, C. J.    After issue in this cause had been sent down for trial, the attorney general procured the return of the record by stipulation; and moves for leave to file seven amended answers, three of them in the way of counter claim.

The original answer admits the contract set up in the com-

plaint between the plaintiff and the building commissioners; admits the plaintiff's presentation of his claim to the legislature, and their refusal to allow it; and denies every other averment of the complaint.

The first amended answer again admits the contract, but denies the plaintiff's performance of it. This is covered by the general denial, and is unnecessary. It admits the discharge of the plaintiff by the building commissioners, but traverses the reasons for it assigned in the complaint. It was held on the demurrer that the commissioners always had absolute right to discharge the plaintiff, with or without reason. The reason is therefore immaterial, and on that ground an averment of it was stricken out of the original answer. And so all the averments of the first amended answer are immaterial or redundant.

The second amended answer pleads only the plaintiff's discharge and the reasons for it, and is immaterial.

The third amended answer pleads generally payment of the plaintiff for all services up to the time of his discharge, and specially that he was paid five per cent. on the cost of the entire building except the south wing. These averments do not appear quite consistent, in view of the judgment on the demurrer, that the plaintiff, if entitled to recover, would be entitled to *quantum valebat* for his plan of the south wing, in addition to five per cent. on the cost of the building of which he superintended the construction. It is difficult to say whether or not the averment is intended to cover the plans of the entire building. If not, it still appears uncertain and evasive. The complaint pleads the cost of the building superintended by the plaintiff, and admits payments of less than five per cent. on the amount. A plea of payment, in excess of the payment admitted in the complaint, would be good. *Martin v. Pugh*, 23 Wis., 184. An answer of payment, partial or total, should plead the amount paid; and especially in a case like this, where the amount payable is dependent on another amount also

traversable. It is impossible to tell here whether the averment goes upon a less cost of the building or a greater payment to the plaintiff. If the original answer had contained an averment so framed, the court would have granted a motion of the plaintiff to make it more definite and certain. And it would be improper to allow so ambiguous an issue by way of amendment. Indeed, as there is a subsequent averment in this answer attacking the value of the plaintiff's plan of the building, it may be that the general averment of payment is intended to go upon a *quantum meruit* for all the plaintiff's services.

But this answer is not confined to payment. It proceeds, in not very apparent connection, to aver that the plaintiff did not superintend the construction of the south wing, which is admitted in the complaint; that he did not furnish working drawings or specifications, but only a general plan of the south wing, an averment unnecessary with the general denial; that the general plan of the south wing was a duplicate of the general plan of the north wing, and became the property of the state in 1870, manifestly immaterial; that the building constructed on the plaintiff's plan was not as represented by the plaintiff, and did not answer the purpose for which it was constructed; and that therefore the plaintiff's general plan for the south wing was worthless, and only partially used. So far as these averments bear on the *quantum valebat* of the plan of the south wing, that is, on the amount of the plaintiff's damages, they are, of course, unnecessary. So far as they bear on the plaintiff's responsibility for his plans, their materiality will be more conveniently considered later. It is sufficient to say here that the third amended answer properly raises no material issue.

The fourth amended answer denies that the state has ever refused to pay the plaintiff his just claim, if any. The complaint avers, and the original answer admits, the presentation of the plaintiff's claim to the legislature and the refusal of that body to allow it. This answer does not imply a traverse of

the averment in the complaint, and has the appearance of an evasive play upon the word *just*. If intended as a traverse of presentation to and refusal by the legislature, it is insufficient, being neither direct nor certain. The answer proceeds to aver the willingness of the board of trustees to settle with the plaintiff; the plaintiff's refusal to appear before them for that purpose, and his failure to demand payment of them; denies their refusal to pay him; avers their performance of the contract; and denies waiver on their part of performance by the plaintiff. All this seems to go upon a misconstruction of the statute governing actions against the state in this court; appearing to substitute the board of trustees for the legislature. This answer presents no material issue.

The fifth amended answer is by way of counter claim. It states at the outset that by the plaintiff's contract he agreed to furnish to the board of building commissioners correct and accurate estimates of materials put in the building by the contractors. This was probably intended as a construction of the superintendent's duty under sec. 9, ch. 39 of 1870, and is not a correct one. The pleading then avers that the plaintiff's specifications required a certain number of feet of iron coil to be placed in the north wing of the building; that the plaintiff negligently certified to the building commissioners that the required quantity of coil had been put in, and that the commissioners, relying on his certificate, paid for it; that in fact a less quantity of coil had been put in; that it was the plaintiff's duty under his contract to know the quantity actually put in; that the commissioners did not and could not then know the fact; and that it came to their knowledge after the plaintiff's discharge.

Probably the building commissioners might have required the plaintiff, upon completion of the building, to inspect all its details, and to report to them whether or not they complied with the contract. In that case, however, there is nothing in the statute to warrant the commissioners to accept the super-

Shipman vs. The State.

intendent's report as conclusive, or to discharge them from their duty to the state. Even the monthly estimates of the superintendent are subject to the examination and approval of the commissioners. The statute is silent upon any duty of the superintendent upon the final completion of the building. It provides only that the commissioners shall certify the amount due to the contractor, including the reserved percentage. This made it the duty of the commissioners to see that the building was completed according to the builder's contract. The commissioners might have required the plaintiff's aid in the performance of this duty. But they could not devolve this or any other of their duties on their superintendent alone. They owed an active duty to the state throughout, in procuring a proper plan, in appointing a competent superintendent, in making a proper building contract, and in procuring the proper completion of the building. The employment of the plaintiff did not fulfill all these duties or discharge the commissioners from them. They might undoubtedly call to their aid throughout the skill of the superintendent as an architect, but they could not constitute him sole building commissioner in their stead. The statute requires them to employ a competent superintendent; makes him, so to speak, the servant of the commissioners; makes the commissioners, so to speak, the superintendents of the superintendent, with power to discharge him, and accountable to the state for his competence in the discharge of his duty. If the commissioners assumed, as both arguments of this cause indicate, that, the contract with the plaintiff once made, they had no responsibility for the sufficiency of the plan or for the completion of the building in compliance with it; that they could devolve all the responsibility on the plaintiff, and look securely and passively on; they sorely mistook their duty.

But here is no averment that the commissioners imposed any duty upon the plaintiff, to aid them in their action upon the completion of the building. Though the answer is very

loosely framed, the plaintiff's certificate of the quantity of iron coil put in, as pleaded, is plainly intended to mean one of his monthly estimates, cannot well mean anything else. And if the commissioners accepted a monthly estimate as conclusive of the quantity of coil put in, they made a grave mistake. The statute requires the superintendent to make monthly estimates; not, as this counter claim states, correct and accurate estimates. A correct and accurate statement would be something more than an estimate: something essentially different from an estimate. That word precludes accuracy. Doctor Webster defines it as "an approximate judgment or opinion as to weight, magnitude, cost, and the like; a calculation without measuring or weighing." And Judge Redfield, speaking of contracts of construction, says that monthly estimates are understood to be mere approximations. 1 Redfield's Railways, 436. It is impossible for us . to say, upon this answer, how apparent to the superintendent or to the commissioners a deficiency in the quantity of iron coil might be; how easy or how difficult it might be to measure it; or how far the superintendent in making a monthly estimate, or the commissioners in approving it, might be negligent in judging without accurate measurement that the required quantity was put in, relying for security upon the reserved percentage of the whole cost of the building, and upon accurate measurement when the building should be completed. In any case, the commissioners would not be justified, in certifying to the final payment for the building, to assume that the required quantity of iron coil was in it, on faith of a monthly estimate of the superintendent. There may be a liability of the plaintiff to the state in this matter. But this pleading, as it is framed, cannot be held to show such a liability.

The sixth and seventh amended answers are also by way of counter claim. They appear to rest upon an entire misconstruction of the plaintiff's contract with the building commissioners, and an entire misconception of his duties under it.

The sixth avers that the plaintiff put, or procured to be put, into the building a defective heating apparatus, not such as his contract bound him to see put in. The seventh avers that, " by the contract and specifications thereto attached," the plaintiff was to procure to be put into the building certain water-closets ventilating downwards, but procured to be put in water-closets ventilating upwards; and agreed to procure to be put in sufficient plumbing, but procured to be put in insufficient plumbing; and agreed to procure to be put on the building a suitable roof, but procured to be put on an insufficient roof. All this appears to confound the plaintiff's contract to furnish plans for the building and superintend its construction, with the builder's contract to construct the building according to the plans. The plaintiff's contract bound him to furnish plans, specifications and drawings, and to superintend the construction of the building; not to put or procure to be put anything in the building. That was for the builder's contract. The pleading goes on to aver several defects in the building as constructed, without connecting the plaintiff in any way with them; without any statement whether the fault was in the plaintiff's plans or in his superintendence; was in either or in both. For all that is pleaded, all these things may have been the fault of the builder. Such pleading is so loose as to give countenance to a suggestion of the plaintiff's counsel, that their substance is rather the work of some querulous layman, than an orderly statement of pertinent facts by a skilled pleader like the learned attorney general. It is very certain that the sixth and seventh answers properly plead no defense or counter claim. And it is not irrelevant to express the hope that the court may not again have to travel through such a barren waste of words.

The plaintiff made his contract as an architect; and should therefore be held at least to reasonable skill in his calling, both in planning the building and in superintending its construction. It may perhaps be doubted if he should be held

responsible for a perfect plan or for perfect superintendence in every detail of such a building, if such things be practicable. It may perhaps be doubted if he should be held responsible in damages for all incidental failures in detail of foresight or of oversight, consistent with proper architectural skill and reasonable diligence. He did not guaranty perfection of the plan or perfection of the building. Under his contract, he became an inferior servant of the state, to perform duties under control of superior servants of the state, who were indeed, *pro hac vice*, the state itself. He prepared plans for the approval of the commissioners. They might have rejected the plans submitted, and called for others. They were made the judges of his plans and of their sufficiency. The commissioners, not the architect, had to determine the plan. When the commissioners accepted the plaintiff's plan, they ratified it. His superintendence was also subject to their oversight and control. They were made judges of the competency of the superintendent. They were the judges of the sufficiency of his superintendence, and could have dismissed him at pleasure. They must therefore be held to have been satisfied with his superintendence, until his dismissal. Indeed they seem to have ratified his superintendence, by accepting the building which he had superintended, without apparent objection. Doubtless there might be defects in the plans or in the execution of them, patent to an expert, latent to an inexpert. For such the plaintiff, not the commissioners, might be liable. But so far as the plans were equally intelligible to the commissioners and the plaintiff, and so far as these pleadings disclose, the commissioners assumed responsibility for the plans when they adopted them. And so far as defects of construction in the building were equally open to detection by the commissioners and the plaintiff, on the completion of the building, and so far as these pleadings disclose, the commissioners assumed responsibility for them when they accepted the building. It is thought proper to say so much, because .

this cause bears some appearance of having grown out of con-
troversy in relation to their respective duties, between the
commissioners and their superintendent.   But what has been
said is not to be understood as an intimation that failure of
the commissioners in their duty would, under any or all cir-
cumstances, excuse the plaintiff's want of adequate skill or
reasonable diligence in the performance of his duty.   He
may, notwithstanding what the commissioners may have done
or left undone, be liable to the state for damages resulting
from unskillfulness or negligence.   But there is certainly
nothing here pleaded on which such liability of the plaintiff
can be sustained.

*By the Court.* — The motion to amend is overruled.