LAURA C. GRATZ, Respondent, v. CITY OF KIRKWOOD and ROBERT WYCOFF, Defendants; ROBERT WYCOFF, Appellant.

St. Louis Court of Appeals.    Argued and Submitted February 6, 1912.    Opinion Filed April 2, 1912.

1. JURISDICTION: Appellate Jurisdiction: Suit to Cancel Taxbills. A suit to cancel special taxbills issued by a city for the construction of a sewer and to remove them as a cloud on title to real estate does not involve title to real estate, and the subject-matter is within the appellate jurisdiction of the Court of Appeals.

2. **APPELLATE PRACTICE: Equity Cases.** The court, on appeal in a suit in equity, must determine for itself the weight to be given the evidence; but great deference will be paid to the findings of the trial court.

3. **MUNICIPAL CORPORATIONS: Special Taxbills: Construction of Sewers: Exceeding Estimated Cost: Method of Computation.** Where the estimate of the cost of construction of a sewer in a city of the fourth class totaled in gross a specified sum and the details thereof were of service only as specifications of the particular work to be done, and the successful bid totaled a less sum than the estimated cost for doing the entire work, and the amount allowed the contractor for doing the work was less than the amount of his bid, the fact that the price of some of the items of the work exceeded the estimated cost thereof would not render the secial taxbills issued for the total cost of the work void, on the ground that the cost of the work exceeded the estimate, within section 9407, Revised Statutes 1909, which provides that no contract shall be entered into for any work for a price exceeding the estimate, inasmuch as the contract was not let on items, but as a whole.

4. **DEFINITIONS: "Estimate."** To make an estimate, ordinarily means to calculate roughly or to form an opinion as to amount from imperfect data.

5. **MUNICIPAL CORPORATIONS: Special Taxbills: Construction of Sewers: Report by Officer in Charge: Compliance with Statute.** Where the mayor of a city of the fourth class, which had let a contract for the construction of a sewer, took charge of the work, and called to his assistance a competent engineer, who worked under the personal supervision of the mayor, and who submitted a report of the completion and cost of the work to the mayor, who, in turn, verified the computation and submitted it to the board of aldermen as his own computation, and they accepted and approved it and ordered the issuance of special taxbills, there was a substantial compliance with section 9385, Revised Statutes 1909, requiring the city engineer or other officer having charge of the work to compute the whole cost thereof; the mayor being "an officer having charge of the work."

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

REVERSED AND REMANDED (*with directions*).

*Rodgers & Koerner* for appellant.

(1) Where the contract is not for a lump sum but for specific amounts for given quantities, the quan-

tities as afterwards ascertained, may be considered in determining whether the contract is within the estimate. In re Marsh, 83 N. Y. 431. (2) An estimate is necessarily only an expression of opinion formed upon the best data obtainable. It is not, and is not intended as, an accurate statement or computation. Boonville ex rel. v. Rogers, 125 Mo. App. 142; Railroad v. Chandler's Adm'r (Ky.), 72 S. W. 805; Shipman v. State, 43 Wis. 381. (3) (a) A public officer may rely upon subordinates for information and details. Kefferstein v. Knox, 56 Mo. 186; Construction Co. v. Loevy, 179 Mo. 455; Cuming v. Grand Rapids, 46 Mich. 150. (b) And may be "in charge" of work without being present at all stages of it, and the actual conduct of which may be in the hands of subordinates. Caron v. Railroad, 164 Mass. 523; Donahoe v. Railroad, 153 Mass. 356; 1 Page & Jones on Taxation by Assessment, sec. 275. (4) In special tax cases, a substantial compliance with the statute is all that the law requires. Cole v. Skrainka, 37 Mo. App. 427; s. c., 105 Mo. 303; Steffen v. Fox, 56 Mo. App. 9; Sheehan v. Owens, 82 Mo. 458.

*A. E. L. Gardner* and *Davis Biggs* for respondent.

(1) In a proceeding to levy a special tax by a municipal corporation, where the owner's property is taken without his consent, every provision of the law made for that purpose must be strictly followed or the taxbills will be void. Municipal Securities Company v. Gates, 130 Mo. App. 552; Kirksville v. Coleman, 103 Mo. App. 215; Paving Co. v. O'Brien, 128 Mo. App. 267; Excelsior Springs v. Ettison, 120 Mo. App. 215; Cole v. Skrainka, 105 Mo. 309; DeSota v. Showman, 100 Mo. App. 323. (2) The contract of Wycoff exceeded the estimate of the engineer as to the item "Class C Excavation," and in view of the fact that the bid and contract of Wycoff did not limit him to an

aggregate amount stated by the engineer or otherwise, there was no limit to the amount that he was to receive for the work, and hence the levy was void. 3 R. S. 1909, sec. 9407; Boonville v. Stevens, 95 S. W. 317; Boonville v. Rogers, 125 Mo. App. 149; DeSota v. Showman, 100 Mo. App. 323; Weisner v. Bank, 106 Mo. App. 668. (3) The validity of the bid and contract ordinance with Wycoff must be determined as of the day it was entered into. The ordinance of a city, like a statute, cannot be given validity by what happened to be done under it. It is judged by what was possible to be done under it. Ramsey v. Field, 115 Mo. App. 626; St. Louis v. Allen, 53 Mo. 55. (4) There was an absolute failure to comply with the mandatory provisions of the statute in having the city engineer or other officer compute the cost of the work and apportion the same against the lots of ground in the district, and for this reason the taxbills were void. R. S. 1909, sec. 9385. (5) The duties of a public officer must be performed by him and not by an employee. Competent persons may be employed as clerks and assistants, but their work must be directed and the results thereof officially certified by the officer. Weisner v. Bank, 106 Mo. App. 668; Rich Hill v. Donnan, 82 Mo. App. 386; Boonville v. Rogers, 125 Mo. App. 142; Nevada v. Eddy, 123 Mo. 546; Sedalia v. Donohue, 190 Mo. 407. (6) The court below having heard the witnesses and determined as a fact that the Mayor was not in charge of the sewer work, this court will defer to that finding and refuse to disturb the judgment, unless the finding is against the great weight of the evidence. And this is true in an equity case. Huffman v. Huffman, 217 Mo. 182; Halsey v. Thrailkill, 141 S. W. 592.

STATEMENT.—This is a suit in equity in which by the petition it is charged that certain taxbills issued against the property of plaintiff for the construction

of a sewer had been unlawfully issued by the city of Kirkwood in favor of one Robert Wycoff, the contractor who had done the work, and of which bills he is the holder. There are several grounds on which the validity of the taxbills is attacked, among others that the property against which the bills were issued is not lawfully within the corporate limits of the city of Kirkwood and hence not subject to assessment for payment of this sewer. The trial court found against plaintiff as to this, and she not appealing, it is out of the case. The grounds of attack on the taxbills which the trial court sustained, are numbered in the petition as "second" and "third." The second ground is that the contract entered into between the city and defendant Wycoff, exceeded the estimate of the engineer and is therefore void. The third ground is that the final estimate computing the whole cost of building the system of sewers in the sewer district extension and apportioning this against the lots and parcels of ground described by plaintiff as her property, was not made by the city engineer or other officer having charge of the work as required by section 5970, Revised Statutes 1899 (now section 9385, Revised Statutes 1909). Plaintiff, charging that the taxbills constitute a cloud upon her title to the real estate, prays that they be ordered to be delivered up to her by the defendant Wycoff for cancellation, and that the city of Kirkwood and its officers be ordered to cancel them upon the records of the city. There is a further prayer that the ordinance which purports to include within the limits of the city of Kirkwood the property of plaintiff and other similar property, be held unreasonable, illegal and unauthorized. There is also the usual prayer for general relief.

It is sufficient to say of the answers of the defendants, that they deny that the taxbills are invalid on any of the grounds alleged, and also plead that plaintiff is estopped by her acts from contesting the bills.

Gratz v. Wycoff.

The replies were general denials to these answers.

The cause coming on for hearing before the court and the evidence being heard, the court found for the defendants as to the validity of the ordinance extending the city limits, and held that the property of plaintiff was subject to taxation for city improvements, but found for plaintiff on the grounds designated in her petition and above referred· to as second and third, and holding them void, entered up a decree cancelling the taxbills. From this decree the defendant Wycoff has duly appealed to this court. In support of its conclusion on the objection designated as second, the court found that the price set forth in the contract entered into between the defendant city of Kirkwood and the defendant Wycoff for the building of the sewers in the sewer district "exceeded the estimate of the engineer for the building of said sewers, and is therefore void," that the board of aldermen had no jurisdiction to enter into the contract, and that the taxbills levied and issued against the plaintiff's property "were and are for that reason null and void." In support of its conclusions on the third objection the trial court found that the official estimate or computation, computing the whole cost of building the system of sewers in the district and apportioning the same against the lots and parcels of ground situated in the district, was not made by the city engineer or other officer having charge of the work, as required by section 5970, Revised Statutes 1899 (section 9385, Revised Statutes 1909), and that on that ground also the taxbills levied and issued against plaintiff's property for the proportionate cost of building the sewers were null and void.

We summarize the evidence. Plaintiff offered and read in evidence the ordinance establishing the sewer district. This ordinance provided that the cost of the construction of the sewers should be borne by the owners of property in the district; that the con-

struction of the sewers should be awarded by contract under the provisions of the ordinance and other ordinances of the city. It was also in evidence that following the adoption of the ordinance an estimate of the cost of the proposed work was made by the city engineer and submitted to the board of aldermen. This estimate (which we shall refer to as the preliminary estimate) giving items, totals $4812.20 as the estimated cost of the work.

The defendant Wycoff submitted his bid for doing the work, which he proposed to do at a total cost of $4226.60. He itemized his proposed work, following the preliminary estimate as to quantities, the price of some of the items being as in that estimate, most of them below it, exceeding it only as to one item, namely "Class C," which was estimated at five dollars per cubic yard, while his bid on it was six dollars, a difference of ten dollars on this one item over the price affixed to it in the preliminary estimate. There was no total or addition of the whole carried out on the bid, but the board of aldermen of the city, in accepting it, as appears by its minutes, referred to it as "bid of Robert Wycoff, $4226.60." Accordingly a contract was entered into with Wycoff at the figures mentioned in his bid, the total contract price being $4226.60. It was also in evidence for plaintiff, "that by a resolution or order of the board of aldermen entered in its minutes the mayor was authorized to employ some competent man to superintend the construction of the sewers and one Charles E. Young was so employed by the mayor; that defendant Wycoff fully performed his part of said contract and completed the work therein contemplated in full compliance with said contract;" that when the work was completed, a computation of its quantities and cost was made by said Young and submitted to the mayor and by him submitted to the board, upon which computation the taxbills as issued were based. By

this final measurement the total cost of the sewer was $3451.88.

Going into particulars as to quantities and price, the quantity of excavation under "Class A," which included ordinary clays, earth and the like, as shown by the final and actual measurement, exceeded the estimate and the bid by 1183.44 cubic yards, and the actual cost exceeded the estimated cost for this by $324.06; the amount of excavation actually done under "Class B," which included boulders, detached rock, etc., fell short of the estimate by 1785 cubic yards and the actual cost fell short of the estimate and bid by $1627.50; the actual amount of excavation under "Class C," which included large stones, solid rock excavation and the like, exceeded the estimate by thirty-seven and forty hundredths cubic yards and in cost by $234.40; the actual cost of the eight inch sewer pipe was $225.28 below the estimate and thirteen dollars and sixty-eight cents below the bid. The man-hole was carried through all the exhibits at the same figure, namely, fifty dollars; eight lamp post holes estimated at fifteen dollars, amounting to one hundred and twenty dollars, were bid on at four dollars, a total of thirty-two dollars, and in point of fact it turned out that only seven holes were required, which at four dollars amounted to twenty-eight dollars, a difference of ninety-two dollars below the estimate and four dollars below the bid and contract. Twelve feet of eight inch iron pipe was the same in all three exhibits, eighteen dollars, but instead of there being one cubic yard of concrete estimated at eight dollars, bid on at seven dollars, the number of yards of concrete was found to be two, the cost fourteen dollars, an excess of six dollars over the estimate and of seven dollars over the bid. To summarize, the bid was $585.60 under the preliminary estimate, while the amount allowed was $774.72 under the bid, and $1360.32 under the preliminary estimate.

The ordinance levying the special tax recites "that the city's representative in charge of said work has reported to the board of aldermen" and computed the cost of the work and apportioned the same against the lots or pieces of ground and has reported the same to the board.

It was further admitted that Mr. Young was a competent engineer, but was not a resident of the city of Kirkwood and was not appointed as an officer, and did not act or certify to his work as an officer of the city.

It was also in evidence that the special tax involved in this case was then levied by ordinance in accordance with the foregoing and special taxbills issued, the three involved in this suit being issued against plaintiff's property and were in the ordinary form of special taxbills.

The above is substantially the evidence for plaintiff.

On the part of the defendant Wycoff, Mr. Ochterbeck testified that he had been mayor of the city of Kirkwood from April, 1906, to April, 1908, filling that position while the sewers under inquiry were being built in the sewer district; knew Mr. Young, who is an engineer, and, the city having no regular city engineer at the time, witness, as mayor, had engaged Mr. Young to superintend the construction of the sewer. The board of aldermen had authorized him, as mayor, to engage an engineer. When the work was completed on this sewer, Mr. Young consulted with him about the figures, the yardage, and so on, and witness authorized him to make a report to him as to the figures, which he did in writing and witness then passed it over to the board of aldermen of Kirkwood. Witness identified the paper which Mr. Young had handed him and which he, the mayor, had "passed over to the board." He further testified that after this paper was handed to him by Mr. Young, he (witness) with other mem-

bers of the board, went over it to verify the computa-
tion, that is to say, multiplied the prices and quanti-
ties and added it up and verified it. It was after they
had done this that he passed it on to the board—
handed the paper to the clerk of the board; after that
the board adopted the ordinance levying the assess-
ment. On cross-examination Mr. Ochterbeck testified
that he was not an engineer; that he knew the com-
putation was correct after having read the report of
the engineer, who was under him, and he (witness),
as mayor, accepted his figures as to the yardage as
correct. He further testified that he considered him-
self competent to tell how many yards of dirt the con-
tractor had dug up, and that when the yardage was re-
ported to him he computed the prices; that was a
mere question of multiplication. Asked if, as a part
of his official duty, he had given. any attention to the
work that was being done in making these sewers, the
witness answered that he had. He had visited the
premises where the sewer was being dug about once
a week and conferred with Mr. Young personally and
had communications with him very nearly every day
with regard to the work and how it was progressing;
Mr. Young reported to him practically every day on
the progress of the work, and by consultation with
Mr. Young, he (witness), as mayor, assumed over-
sight and charge of the work as it went along. When
the work was done he (witness), as mayor, made offi-
cial report to the board that the work was very satis-
factorily done, and turned in the report Mr. Young
had made to him. Asked if Mr. Young had charge of
supervising the sewer to see that it was properly
done, witness answered, ''Only in so far as to see that
it was properly done. He was there practically not so
much as the city's representative, but for myself,''
he (witness), as mayor, being the city's representa-
tive in the matter and he had employed Mr. Young.
Mr. Young was not employed for any definite time but

at so much per day and when the work was finished the city paid him so much per day for the actual work he did in supervising the construction of the sewer.

This is substantially all the evidence in the case pertinent to the points in decision, Mr. Ochterbeck being the only witness testifying, as far as appears by the abstract.

REYNOLDS, P. J. (after stating the facts).— This being a suit in equity to cancel certain taxbills and remove them as being a cloud on the title of plaintiff to certain real estate owned by her, its subject-matter is within the appellate jurisdiction of this court, our Supreme Court, in Smith v. Westport, 174 Mo. 394, 74 S. W. 610, having expressly decided, on the authority of Barber Asphalt Paving Co. v. Hezel, 138 Mo. 228, 39 S. W. 781, that such a suit is not one involving title to real estate. The amount involved is also within our jurisdiction.

Being a suit in equity, the appellate court is charged with the duty of determining for itself the weight to be given to the evidence, and in all cases on appeal, whether in actions at law or suits in equity, is charged with the proper application of the law to the facts.

It is almost a maxim applied in the disposition of equitable actions in the appellate courts, that while the duty of determining on the evidence itself is cast upon the appellate court, great deference will be paid to the conclusion arrived at by the trial court on the evidence. But this deference should not be, and never is, carried to the extent of yielding the convictions of the appellate judges to those held by the trial court. To do so would be abrogating a duty imposed upon the former by the law and under the practice in equity.

It is with the greatest deference, therefore, to the learned trial judge, who heard and determined this case, that we are compelled to differ with him

both as to the conclusion of fact and the application of the law to those facts.

The city of Kirkwood is a city of the fourth class. Under section 9385, Revised Statutes 1909, it is provided, among other things, that district sewers shall be established within the limits of the districts to be prescribed by ordinance and that the board of aldermen of the city shall cause sewers to be constructed in a district either on petition of a majority of the property holders resident therein or whenever the board shall, of its own volition, deem such sewers necessary for sanitary or other purposes. Such sewers shall be of such dimensions and materials as may be prescribed by ordinance. It does not appear in evidence in this case whether this district sewer under consideration was constructed pursuant to a petition of the property owners or by the board, acting on its own discretion. . That is not material here, as there is no question that an ordinance providing for the construction of this district sewer was duly adopted.

Section 9407, of the Revised Statutes 1909, provides that before the board of aldermen shall make any contract for building sewers, "an estimate of the cost thereof shall be made by the city engineer or other proper officer and submitted to the board of aldermen, and no contract shall be entered into for any such work or improvement for a price exceeding such estimate."

Taking up the finding and conclusion arrived at by the learned trial judge, to the effect that these special taxbills are void because the price exceeded the estimate and the bid on some of the items, we are unable to agree with him.

Considering the bid and contract and estimate as a whole, the contract was not let "for a price exceeding the estimate." [Section 9407, supra.] This contract was not let on items but as a whole; the bid was taken as a whole; the contract was made as a whole.

The prices were of no concern to the property holders whose property was to be assessed for this improvement. What they were concerned with was the total. A very different proposition would be presented if the several classes of work, for instance the earth excavation, the loose rock excavation and the rock in place, were to have been let out under separate contracts. But that was not the case here. The estimate was in gross. The particulars and details were of service only as specifications of the particular work to be done; accomplishing that, they pass out of consideration for all practical purposes, the total price not exceeding the total estimate.

Furthermore, these itemized prices and quantities were mere estimates, when they entered into the preliminary estimate, the bid and even the contract.

We have here practically the same situation presented to the Court of Appeals of New York, In re Marsh, 83 N. Y. 431, l. c. 435. In that case it was said, "The work was let as a whole and any bidder could in the first place estimate the cost of the whole and then distribute the sum among the items as he liked." There, as here, the vital, crucial point was, the final, actual cost of the work as a whole. Of such a situation it is held in the case above cited, that the variance in the estimate of the cost of the items was not a substantial variance, tested by the actual outcome as to cost of the whole work. Such variance, that court held, is allowable.

In Cuming v. City of Grand Rapids, 46 Mich. 150, Judge Cooley, speaking for the Supreme Court of Michigan, says, treating of a special taxbill for street improvements, where the estimate and bid for the work were in gross, not by items, that the estimate required is for the information of the council, to enable that body to determine how much money shall be raised; even if they have the sum total and act upon it without calling for further particulars, it may well be urged

that the question of the presence of particulars is precluded.

That the bid and the price ultimately paid varied from the preliminary estimate made by the city engineer, on which estimate bids were doubtless invited for doing the work, was to be expected. An estimate does not pretend to be based on absolute calculations but is exactly what the word means, an estimate. To make an estimate, ordinarily means "to calculate roughly, or to form an opinion as to amount from imperfect data." [Louisville, H. & St. L. Ry. Co. v. Chandler's Admr. (Ky. Court of Appeals), 72 S. W. 805.] Webster's New International Dictionary (Ed. 1910), defines the word estimate as meaning "to fix the worth, value, size, extent, etc., of, especially roughly or in a general way." The use of the word estimate "precludes accuracy. . . . Monthly estimates are understood to be mere approximations." [Shipman v. State, 43 Wis. 381, l. c. 389, citing 1 Redfield on Railways, 436.]

As a matter of fact the price at which the work was done fell much below the preliminary estimate; it was even below the bid and contract. It fell below the estimated cost by over $1300; more than $700 below the bid and contract. The property holders were not only in no manner whatever injured but were benefited by being called on to pay a very considerable amount less than the estimated price for which the proposed work was to be done. It is so manifest in the case at bar that absolutely fair treatment to the taxpayer is shown by the outcome of this transaction, that we find no reason to hold and no authority requiring us to do so, that because there was a variation one way or the other of the items in detail as between the estimate, the bid and the final computation, that these taxbills are void. So that as far as this point is concerned, we are compelled to differ from the conclu-

·sion arrived at by the learned trial judge, and to hold that considering the preliminary estimate, this con- ·tract was not let ''for a price exceeding such esti- mate.''

Taking up the second point, we are unable to see a departure from substantial compliance with the pro- visions of section 9385, Revised Statutes 1909, which :provides that ''as soon as any district sewer shall have been completed, the city engineer or other offi- ·cer having charge of the work shall compute the whole ·cost thereof,'' etc.

We have examined all of the authorities referred to by counsel, as well as those relied upon by the trial judge as the foundation for his conclusion on this point in this case, and are unable to find any of them that go to the extent claimed for them by that learned judge or by counsel. On the contrary, we think that in so far as applicable to the facts in the case at bar, they make against the position of both. Thus, in He- man Construction Company v. Loevy, 179 Mo. 455, 78 S. W. 613, in which it was sought to defeat a special taxbill which had been made out by an appointee ·of the president of the board of public improvements, ·our Supreme Court held (l. c. 466) that the act of the appointee, done under the authority of the president, was the act of the president and was sufficient.

In Jaicks v. Merrill, 201 Mo. 91, 98 S. W. 753, our Supreme Court, distinguishing the case from that of City of Nevada to use, v. Eddy, 123 Mo. 546, 27 S. W. 471, says (l. c. 101) that in the case before it, ''the com- mon council of the city, upon the recommendation of the park board, determined the material and provided the specifications, and the contract was let to the low- ·est bidder and the work was performed in strict con- formity to the contract and accepted by the board :and the city, and the mere arithmetical work of the apportionment of the total cost to the several lots :abutting on the improvement, by the clerks in the city

engineer's office, was in no sense a delegation of the authority of the board and council to those clerks."

So too, in Dickey v. Porter, 203 Mo. 1, 101 S. W. 586, answering the objection that the taxbills had not been certified by the officer in person and were therefore void, our Supreme Court (l. c. 30) referring to Jaicks v. Merrill, supra, holds that it sees "no reason for departing from the ruling made in that case. A reasonable construction of the charter does not require the president of the board of public works, with his own hand, to do all the clerical work of making out these special taxbills, but when they are issued, as these were, by authority of the board of public works, and signed by its president by the party specially authorized by the resolution of the board, all the substantial requirements of the charter are complied with."

It is said by the Kansas City Court of Appeals in Municipal Securities Corporation v. Gates, 130 Mo. App. 552, l. c. 556, 109 S. W. 85, that "in construing proceedings *in invitum,* the law authorizing them should be at least substantially followed. The reason for it, in cases of this kind, is that the taxpayer having no voice in the matter ought not to be held liable unless the law of the case has been in all respects substantially followed."

With these cases, and others cited by counsel before us, we see no reason whatever, on the facts in this case, to hold that the law relating to the construction of sewers and the issue of these taxbills in payment therefor has not been substantially followed. The mayor of this city was its executive head. As such the evidence shows that he personally took charge of the construction of this sewer. Not being an engineer, he called to his assistance a skilled engineer to look after the technical details. This engineer did the work under the personal supervision of the mayor, consulted him, reported to him. The mayor was fre-

quently, practically constantly, in direct supervision of it. As such he was "the officer having charge of the work." [Section 9385, supra.] To all legal intendment, he computed the whole cost of the work. As such he reported the completion of the work and its cost to the board of aldermen, and that body approved and accepted it. That the engineer may have measured it up and written out the report is entirely immaterial. He submitted that report to the mayor, who in turn verified the computation, submitted it to the board as his own computation, the board accepted and approved of it and ordered the projection of the tax and issue of the bills. All this was in substantial compliance with the law. We are therefore unable to agree to the conclusion arrived at by the learned trial court, that for this last mentioned reason the taxbills are void.

Our conclusion upon the whole matter is that these taxbills were properly issued, issued in due compliance with the law regarding the matter. It results from this that the judgment of the circuit court holding these taxbills void and ordering that they be surrendered up and cancelled is error. That court was therefore in error in sustaining the petition on these grounds and rendering judgment for plaintiff, respondent here. That judgment is reversed and the cause remanded with directions to the circuit court of St. Louis county to enter up judgment denying the relief prayed for and dismissing the suit. *Nortoni* and *Caulfield, JJ.,* concur.