J. E. HATHMAN, INC., a Missouri corporation, Appellant,

v.

SIGMA ALPHA EPSILON CLUB of Columbia, Missouri, a Missouri corporation, and E. Paul Smith, Trustee, St. Louis Federal Savings and Loan Association, Respondents.

No. 55718.

Supreme Court of Missouri, En Banc.

March 12, 1973.

FINCH, Chief Justice.

Plaintiff contractor brought suit to enforce a mechanic's lien for labor and materials furnished pursuant to a written contract for reconstruction of the Sigma Alpha Epsilon fraternity house at Columbia, Missouri. Plaintiff's position was that the contract between the parties was an unambiguous contract whereby the contractor was to be paid cost of labor, materials and other construction expenses (with certain specified exceptions) plus 6% of the cost of construction. Plaintiff's total claim was for $413,276.97. It had received payments of $269,692.98 and sought a lien for an additional $143,583.99.

On the theory that the contract was ambiguous and to support a counterclaim seeking reformation of the contract, defendant Sigma Alpha Epsilon (SAE) offered, and the trial court admitted, evidence to show that the maximum guaranteed cost of the job was $300,000.00 plus a fee of 6% thereof, or a total of $318,000.-00. The trial court made findings wherein he held that the contract provided for a maximum of $318,000.00 and entered judgment establishing a lien for $48,307.02, the difference between $318,000.00 and payments previously made. Plaintiff then appealed. We reverse and remand with directions.

We have jurisdiction on the basis of the amount involved, this appeal having been lodged here prior to January 1, 1972. Mo. Const. Art. V, § 31.

An opinion was written in division affirming the judgment of the trial court, but a dissenting opinion was filed and the case was transferred to the court en banc. Following reargument, the divisional opinion was not adopted and the case was reassigned.

The basic issue for decision is whether or not the written contract was an unambiguous cost plus fee contract. The applicable rules of law are stated in Kalen v.

Scott O. Wright, Brown, Wright & Willbrand, Columbia, for appellant.

Terence C. Porter, Columbia, for respondents; Porter & Cleaveland, Columbia, of counsel.

Steele, 341 S.W.2d 343, 346 (Mo.App. 1960):

"The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. Where there is no ambiguity in the contract the intention of the parties is to be gathered from it and it alone, and it becomes the duty of the court and not the jury to state its clear meaning. McFarland v. Gillioz, 327 Mo. 690, 37 S.W.2d 911; National Corporation v. Allan, Mo.App., 280 S.W.2d 428(3). A court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language for there is nothing to construe. Mickelberry's Food Products Co. v. Haeussermann, Mo.Sup., 247 S.W.2d 731(5). It is only where the contract is ambiguous and not clear that resort to extrinsic evidence is proper to resolve the ambiguity. See 17 C.J.S. Contracts § 321, p. 749; 12 Am.Jur., Contracts, Section 229, page 753.

"A contract is not rendered ambiguous by the fact that the parties do not agree upon the proper construction to be given it. Mickelberry's Food Products Co. v. Haeussermann, supra, 247 S.W.2d 731(6). A contract is ambiguous only when it is reasonably susceptible of different constructions. In determining whether or not there is such an ambiguity as calls for construction, the whole instrument must be considered. Writings made a part of the contract by annexation or reference are to be considered in determining whether or not it is ambiguous.

"Presumptively, the intent of the parties to a contract is expressed by the natural and ordinary meaning of the language referable to it. Even seeming contradictions must be harmonized away if that be reasonably possible. State Mutual Life Assur. Co. of Worchester v. Dischinger, Mo.Sup., 263 S.W.2d 394(5); Mathews v. Modern Woodmen of America, 236 Mo. 326, 139 S.W. 151, 155."

On February 14, 1965, the fraternity house was heavily damaged by fire, a portion of the building having been totally destroyed. SAE immediately hired plaintiff to do the demolition, salvage and clearing. Shortly thereafter it employed the architectural firm of Marshall & Brown to prepare plans and specifications for rebuilding the house and without taking bids arranged with plaintiff to do the reconstruction work. SAE proceeded at once with actual reconstruction, even though final plans and specifications and a contract had not been prepared, because it wanted to reoccupy the house as quickly as possible. Plans and drawings were prepared and submitted throughout the period of construction. Ultimately, in November, 1965 a written contract (dated April 1, 1965) was prepared by the architect and presented by SAE to plaintiff for signature. The job was completed in August, 1966.

The contract was on a printed form which recited at the outset that it was issued by the American Institute of Architects (AIA) "for use when the cost of the work plus a fee forms the basis of payment." It provided that the contractor was to provide all labor and materials and to do all things necessary to complete construction of the house according to plans, specifications and changes listed.

Article 2 authorized the owner to make changes, issue additional instructions, require additional work or omission of work previously ordered, and contained the additional provision that "Maximum cost of the work will be adjusted in accordance with changes ordered."

Article 3 specified the contractor's duties and imposed the obligation on it to complete the work "in the most expeditious and economical manner consistent with the interests of the Owner."

Article 3A was typed in the contract as an additional Article, and subparagraph (a) thereof provided as follows: "Estimated maximum cost of this work is Three

Hundred Thousand Dollars and no cents ($300,000.00)."

Article 4 provided that in consideration for its performance, contractor was to be paid "6% of cost of construction."

Under Article 5 the owner agreed "to reimburse the Contractor in current funds all costs necessarily incurred for the proper execution of the work and paid by the Contractor, such costs to include the following items, and to be at rates not higher than the standard paid in the locality of the work except with prior consent of the Owner:" The Article then spelled out in considerable detail items included, consisting of such items as labor, certain salaries, materials, permit fees, losses and expenses not compensated by insurance which were not due to fault or neglect of the contractor, sub-contracts, premiums on bonds and insurance, rentals of certain equipment, including transportation thereof, cost of hand tools consumed in the prosecution of the work, and certain other expenses.

Article 6 listed certain costs for which the contractor was not to be reimbursed Subsequent Articles contained various provisions not pertinent to the issue here presented.

It is abundantly clear that the printed provisions in the AIA form provided for an unambiguous contract wherein the contractor would receive reimbursement of costs of construction plus a fee for its services. The heading of the printed contract and the words "Agreement between Contractor and Owner Cost Plus Fee Basis," appearing at the bottom of each page, so indicate. Article 5 details specific types of costs for which the contractor is entitled to reimbursement, and in said Article the owner agrees to reimburse the contractor for *all costs* of specified kinds necessarily incurred in execution of the work. The types of expenses for which there is not to be reimbursement are specified in Article 6. The contractor's compensation for performing the work is covered in Article 4 wherein it is provided that the con-

tractor is to be paid a fee of 6% of construction costs. None of these printed provisions disclose any ambiguity as to the kind of contract created by the execution of such form or the basis on which the contractor was to be paid. SAE makes no contrary claim as to these printed provisions. Rather, it says only that the contract is ambiguous by reason of the addition of Article 3A, which was typed on the second page of the contract, and by the addition of a typed sentence at the end of Article 2. SAE's brief states its position as follows:

"The provision that creates the confusion is found in Article 3A which reads as follows:

'Article 3A. (a) Estimated maximum cost of this work is Three Hundred Thousand Dollars and no cents ($300,-000.00).

(b) It is hereby mutually agreed that the Contractor shall complete all work so that the Owner can have useful occupancy for housing and feeding of fraternity members on or before January 15, 1966.'

In addition, Article 2. Changes in the Work provides in part:

'Maximum cost of the work will be adjusted in accordance with changes ordered.'"

The foregoing additions, it is argued by SAE, make the whole contract ambiguous.

The key words in Article 3A are "Estimated maximum cost." Webster's Third New International Dictionary defines "estimate" as "a statement of the often approximate amount for which certain work will be done by one who undertakes it." It also includes the definition, "to arrive at an often accurate but usu. only approximate statement of the cost of (a job to be done) (2): to arrive at a sometimes only tentative price for which one is willing to undertake (a job to be done)."

The term "estimate" has been considered in decisions in this state. For example, in Gratz v. City of Kirkwood, 165 Mo.App. 196, 145 S.W. 870, 874 (1912), the court said: " * * * An estimate does not pretend to be based on absolute calculations but is exactly what the word means, an estimate. To make an estimate, ordinarily means 'to calculate roughly, or to form an opinion as to amount from imperfect data.' Louisville, H. & St. L. Ry. Co. v. Chandler's Adm'r (Ky. Court of Appeals) 72 S.W. 805. Webster's New International Dictionary (Ed. 1910) defines the word 'estimate' as meaning 'to fix the worth, value, size, extent, etc., of, especially roughly or in a general way.' The use of the word estimate 'precludes accuracy. * * * Monthly estimates are understood to be mere approximations.' Shipman v. State, 43 Wis. 381, loc. cit. 389, citing 1 Redfield on Railways, 436."

In Beeler v. Miller, 254 S.W.2d 986, 990 (Mo.App.1953), the court quotes with approval from Gratz v. City of Kirkwood, supra, and recognizes that an estimate is an approximation. In Klein v. Puritan Fashions, Inc., 439 S.W.2d 229, 232 (Mo.App.1969), the court had this to say: "*First*, the words 'estimate' and 'estimated' are inconsistent with a promise to do specific work for an exact sum. The word 'estimate' negates certainty; it means 'to calculate roughly, or to form an opinion as to amount from imperfect data.' (Beeler v. Miller, Mo.App., 254 S.W.2d 986 [4–6].)"

▪ We agree with these statements as to the meaning of "estimate" or "estimated." It is not an ambiguous term.

▪ The fact that the word "estimated" was used in conjunction with the words "maximum cost" does not change the meaning of "estimated" or make it or the phrase ambiguous. Together they simply indicate an approximation or rough calculation of the maximum cost of labor, material and other construction costs likely to be required. The phrase is not an expression of a guaranteed maximum, as

SAE contends. If that had been the intention, the parties would have stated that the maximum was guaranteed or that $318,000.00 was the most that the owner would have had to pay as reimbursement for labor and material, or some other such expression. The parties would not have used a word which by generally accepted definition and usage means only an approximation or rough calculation.

In the case of Kalen v. Steele, supra, 341 S.W.2d 1. c. 346, the Court of Appeals considered a contract written on this same AIA cost plus printed form. In that instance, Article 4 was completed to provide as follows: "4. Owners agree to pay the Contractor the sum of ten percent of construction cost estimated to be $15,999.30, Contractor's fixed fee being, $1,599.93, payable as follows:" (after which a schedule for payment of this fixed fee was established). The court held that the fee to be paid the contractor was a fixed specific amount, namely, $1,599.93, that being the amount specified in the contract. However, even though Article 4 also referred to the construction cost being estimated to be $15,999.30 and even though a cost sheet showing an estimate of labor and material was attached, the court nevertheless held that the contract was not ambiguous and that it clearly was a contract for reimbursement on a cost plus fixed fee basis. The use of the term "estimated" construction cost did not make the contract ambiguous. The court's conclusion in that case is persuasive here.

Nor is the situation changed by the addition to Article 2 of the words "Maximum cost of the work will be adjusted in accordance with changes ordered." The parties recognized in Article 2 that the owner had the right to require additional work not included in plans and specifications or to omit work therein called for. By the typed sentence they simply agreed that the maximum cost would be adjusted accordingly to compensate for the addition or deletion of work. That sentence is not sufficient either to convert the contract to

a fixed maximum contract or to make the contract, considered as a whole, ambiguous. Such construction harmonizes Article 2 with the rest of the contract in accordance with the principles expressed in Kalen v. Steele, supra.

In view of our conclusion that the contract was unambiguous and that it was what it purported to be—a cost plus fee contract, it follows that extrinsic evidence to supplement or change the meaning of provisions cannot be considered to alter the meaning of the unambiguous contract, and the trial court erred in considering such evidence for that purpose.

In addition to its answer, SAE filed a counterclaim in which it alleged that at the time of the making of the contract it was understood by the parties that the contractor was to receive the cost of construction plus 6% of such costs, but that under no circumstances was the owner to be liable to pay more than a maximum of $318,000.00 regardless of the costs of construction. SAE alleged that by mutual mistake of fact the written contract did not fully and truly express this intention and meaning of the parties. The mutual mistake, according to the counterclaim, consisted of using the words "Estimated maximun cost of this work is Three Hundred Thousand Dollars * * *" instead of "The guaranteed and agreed maximum costs of construction for which Sigma Alpha Epsilon Club of Columbia, Missouri will be liable is Three Hundred Thousand Dollars ($300,000.00), regardless of whether the actual costs of construction exceed said sum. Sigma Alpha Epsilon Club of Columbia, Missouri shall in no event and under no circumstances be liable under this contract for an amount in excess of Three Hundred Eighteen Thousand Dollars ($318,000.00)." On such basis, SAE asked the court to reform the contract to fully and truly express such intention and meaning.

In its findings and judgment the trial court made no specific reference to SAE's counterclaim and did not state explicitly that it was acting on the counterclaim. However, in paragraph numbered 2, the court found as follows:

"2. That under the terms of the written agreement the plaintiff, J. E. Hathman, Inc. agreed to complete the reconstruction of defendant's fraternity house for the cost of labor and material plus a contractor's fee of 6% of the items of cost with a maximum contract price in the amount of $300,000.00 for cost plus a contractor's fee of 6% of cost or a maximum contract price of $318,000.00 including both cost and. contractor's fee."

As noted, the court does not clearly state whether it is finding the contract ambiguous and on the basis of extrinsic testimony is then declaring its meaning; or whether it is finding that the contract is to be reformed so as to provide as specified in said findings. Whichever the court meant, the result necessarily would have been the same because in either event SAE would be liable only for the difference between $318,000.00 and payments previously made.

In oral argument counsel were asked by the court whether this appeal was premature on the basis that SAE's counterclaim remained undisposed of. Counsel for SAE took the position that the trial court by implication did rule on the counterclaim, indicating by his findings that he would reform the contract and limit plaintiff to recovery based on a maximum liability of the defendant for $318,000.00. The finding can be so interpreted. Consequently, the court has concluded to treat the judgment as constituting a ruling on the counterclaim as well as on plaintiff's petition so that the judgment appealed from was in fact a final judgment. This, of course, avoids reversing and remanding for a specific ruling on the counterclaim and the attendant delay.

We have concluded from examination of the record that a reformation of the contract on the basis of mutual mistake

of fact was not justified. In Allan v. Allan, 364 S.W.2d 578, 581 ·(Mo.1963), this court said: " '[A] mistake affording ground for the relief of reformation must be mutual and common to' both parties to the instrument. It must appear that both have done what neither intended * * * [A]nd that mutual mistake, in order to justify granting the relief of reformation, must be established by clear and convincing evidence.' "

■ Applying the foregoing rule to this case, the evidence did not show a mutual mistake of fact. Both Mr. Trice and Mr. Lucas, who represented the owner in these transactions, testified that when the contract was being prepared, Mr. Cassity, of plaintiff construction company, requested that the contract use the words "estimated maximum cost" rather than "guaranteed maximum cost," and that both of them knew that the words "estimated maximum cost" were in the contract when they signed it on behalf of SAE. Mr. Cassity did not remember this conversation, but SAE's own evidence shows that the authorized representatives of SAE knew that the use of the words "estimated maximum cost" had been requested and that such words had in fact been used in the contract which they were then executing. The evidence will not justify a finding that inclusion of the phrase "estimated maximum cost" was the result of a mutual mistake of fact.

In its brief discussing this point, SAE makes some reference to a claim of fraud or deceit on the part of plaintiff. However, this claim cannot be sustained for two reasons. In the first place, we find no evidence in the record to sustain a claim of fraud or deceit, and secondly, SAE's counterclaim made no allegation whatsoever of fraud or deceit. It was based solely on a claim of mutual mistake of fact; hence there is no issue as to fraud or deceit present.

For the above reasons, we conclude that the court's action in reforming the contract on the basis of mutual mistake of fact was error and cannot stand, and that the action of the trial court must be reversed.

There is no contention by SAE that the amount claimed by the plaintiff as the cost of construction is incorrect or that the labor, material and other costs claimed were not actually incorporated into the work. In oral argument, in answer to a question by the court, counsel for SAE recognized that either the trial court's judgment should stand or if the contract was not ambiguous and was not to be reformed, the plaintiff would be entitled to a judgment for $143,583.99 plus interest.

Accordingly, the judgment of the trial court is reversed and the cause remanded with instructions to enter a judgment for plaintiff in the amount of $143,583.99 plus interest at 6% per annum from August 25, 1966, and that the same be declared a lien on the premises superior to the lien of the deed of trust of the St. Louis Federal Savings and Loan Association.

SEILER, HOLMAN and BARDGETT, JJ., concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

HENLEY, J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

MORGAN, J., not participating.

DONNELLY, Judge (dissenting).

I respectfully suggest that the principal opinion decides this case by answering the wrong question. It is not important here whether the words "Estimated maximum cost" are ambiguous. The determinative

question is whether the insertion of *all of* Article 3A renders the contract ambiguous as to what the parties intended the cost of construction should be. I believe it does. If it were not there, Article 5 would stand uncontradicted and the contract would be certain as to cost. The mere presence of Article 3A in the contract makes the contract ambiguous as to cost.

The principal opinion's reliance upon the case of Kalen v. Steele, Mo.App., 341 S. W.2d 343 (1960), is misplaced. In *Kalen*, the homeowners sought to rely on a "cost sheet" attached to the contract in support of their contention that there was an agreement to pay a fixed price for costs of construction. The Kansas City Court of Appeals disagreed, holding the contract unambiguous as to costs of construction because the "cost sheet" related only to the contractor's fixed fee. The Court said (341 S.W.2d 343, 347): "The cost sheet obviously is the contractor's estimate of what the cost of the listed items of material and labor to be used in constructing the house will be. It is the basis for the figure used in the contract in Section 4 for the determination of a fixed fee of the contractor for his services. It does not contradict, modify, change or make uncertain the clear, unequivocal provisions of Section 5 which provide, in addition to the fixed contractor's fee contained in paragraph 4, for the contractor to be reimbursed all his necessary expenses for material, labor, etc., in constructing the house."

In my opinion, Article 3A contradicts, modifies, changes and makes uncertain the provisions of Article 5. The insertion of Article 3A in the contract renders the contract ambiguous as to cost. The trial court did not err in considering extrinsic evidence to ascertain the intention of the parties. I would affirm the judgment.

I dissent.