**Betty LaVonne Tagtmeyer MARSHALL,**
**Appellant,**

**v.**

**ESTATE of Joseph A. MARSHALL,**
**Deceased, and Susan Ayres Marshall,**
**Executrix, Respondents.**

**No. KCD 27120.**

Missouri Court of Appeals,
Kansas City District.

Nov. 3, 1975.

Motion for Rehearing and/or
Transfer Denied
Nov. 19, 1975.

---

A. Lamkin James, James & Butterfield, Marshall, William F. Brown, Sedalia, for appellant.

Newton R. Bradley, Robert L. Langdon, Bradley, Skelton & Schelp, Lexington, Harris & Reid, Marshall, and Bradley, Skelton & Schelp, Lexington, of counsel, for respondents.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Action for specific performance of antenuptial agreement.

The agreement, executed July 27, 1972, between Betty LaVonne Tagtmeyer, first party, and Joseph Ayres Marshall, second party, immediately prior to their marriage, provided:

"WHEREAS, the parties contemplate marriage and both are severally possessed of real and personal property, each have children of former marriages and desire to limit, determine, regulate, define and control the interest which each of them may have in the estate and property of the other and,

"WHEREAS, this agreement is entered into with full knowledge of each party of the nature, extent and probable value of all real, personal and mixed property interests of the other party after full disclosure thereof by each party to the other, as set out in Exhibit 'A' attached hereto and incorporated herein by reference and,

"WHEREAS, possessed of said knowledge and without any coercion, duress, intimidation or misrepresentation of either party acting on the other, with complete freedom of choice and with the full understanding that the provisions hereinafter made for each other are substantially less than probably would accrue absent this agreement, and acknowledging that the provisions hereinafter made for each other are just, fair and reasonable under all the circumstances, the parties hereto agree as follows

"1. First Party shall have the full right, power and authority in all respects as if she were unmarried to use, enjoy, give, pledge, sell, mortgage, convey, lease and otherwise control, manage and deal with all of her real, personal and mixed property rights, interests and estate, either now or hereafter acquired, including the right and power to control and dispose of same by last will and testament.

"2. [Paragraph 2 provides for identical rights in Second Party.]

"3. Each party agrees that in the event the other desires to mortgage, sell,

convey, give, lease, pledge or otherwise deal with his or her separate property, * * * the other will execute such instruments and documents as may be necessary or required.

"4. In the event of the death of Second Party, First Party shall have no interest in any property, real, personal or mixed either now owned or hereafter acquired by Second Party, by way of claims, demands, inheritance, succession, widow's support allowances, dower, homestead, exempt property and any and all other statutory and inheritance rights of a surviving spouse, including the right of election of First Party as surviving spouse to take against Second Party's last will and testament, but all such rights are expressly waived hereunder, EXCEPT that First Party shall be entitled, in lieu thereof, to the residence dwelling of the parties on the date of Second Party's death and the sum of $25,000.00, * *.

"5. * * *

"6. It is the agreement and understanding of the parties that their respective rights to each other's property and estate shall be and is hereby expressly fixed and determined by this agreement and is binding upon their heirs, legatees, devisees and personal representatives."

Exhibit A to the agreement showed real and personal property belonging to Betty LaVonne Tagtmeyer valued at $116,500, including a "residence dwelling," 2616 Anderson, Sedalia, Missouri, valued at $35,000, and real and personal property belonging to Joseph Ayres Marshall valued at $358,220, including a residence on 80 acres of land in Saline County, Missouri, valued at $25,000.

Joseph Ayres Marshall died testate September 18, 1972, leaving all his property to his children, Joseph Daniel Marshall and Susan Ayres Marshall, and Letters Testamentary were granted to Susan Ayres Marshall.

On March 9, 1973, Betty LaVonne Tagtmeyer Marshall filed, in the Probate Court of Saline County, Petition For Specific Performance, Or In The Alternative, For Allowance of Marital Rights, by which she prayed "that specific performance of the antenuptial contract * * * be ordered * * * by allowing a claim in favor of the petitioner against the estate in the sum of $60,000.00, being the cash amount provided for in said contract plus the reasonable value of the dwelling * * *; or in the alternative, that she be allowed all of her marital rights as the widow of the decedent * * *."

The probate court ordered the executrix to pay Betty LaVonne Tagtmeyer Marshall $60,000, and the executrix appealed to the circuit court.

In addition to the foregoing facts, plaintiff offered the testimony of herself and three other witnesses:

Mrs. Marshall established that she lived at 2616 Anderson, Sedalia, Missouri, and it was conceded that the parties lived in her home during her marriage to Mr. Marshall.

Ola Wright was a mutual friend of Mr. and Mrs. Marshall. On the night they became engaged, about two or three weeks before their marriage, they were at Mrs. Wright's home. Mr. Marshall told her that he did not intend to live on his farm but would live in Sedalia. He was going to try to find a home large enough to accommodate both her family and his family because the house she was living in was inadequate. After they were married, on one occasion Mr. Marshall asked if she knew of a five-bedroom house he could purchase and, on another, he told her they had found a house they liked but it was too far out in the country and they were now trying to see what they could do about enlarging Betty's house.

Delores Smiddy, a real estate agent, had shown Mr. and Mrs. Marshall several homes

ranging in price from $37,500 to $69,500. The only one Mr. Marshall liked was too far out to be driving into school for the children. She was familiar also with the home where Mr. and Mrs. Marshall were living, Mrs. Marshall's home in Sedalia, which was a four-bedroom home.

Dianne Overmeyer was also a mutual friend of Mr. and Mrs. Marshall. One night after they were married they had been house hunting and came over to visit. They were discouraged because they had not been able to find a suitable home and Mr. Marshall said he thought he would remodel Betty's house instead of buying a new one.

The circuit court's judgment entry recited:

"The court * * * finds that petitioner and decedent, on July 27, 1972, immediately prior to their marriage, entered into a valid and binding written antenuptial agreement and that among other things, it was agreed therein that upon the death of Joseph A. Marshall, Betty LaVonne Tagtmeyer Marshall, claimant, as his widow, would receive from his estate Twenty-five Thousand Dollars ($25,000.00) in cash and the residence dwelling of the parties on the date of death of Joseph A. Marshall, deceased, in lieu of all claims, demands, inheritance, succession, widow's support allowances, dower, homestead, exempt property and any and all other statutory and inheritance rights of a surviving spouse, including the right of election of First Party as surviving spouse to take against Second Party's last will and testament, and the court finds that said antenuptial agreement was not altered, amended or changed subsequent to its execution by any subsequent agreements or actions of the parties, and the court finds that the residence dwelling of the parties on September 18, 1972, the date of the death of Joseph A. Marshall, deceased, Second Party in the antenuptial agreement, was the residence of claimant, located at 2616 Anderson, Sedalia, Missouri, in which decedent had no interest at the date of his death, and the court, therefore, finds that claimant is entitled to specific performance of the antenuptial agreement and thus is entitled to receive the sum of Twenty-five Thousand Dollars ($25,000.00) in cash from the estate of Joseph A. Marshall, deceased, under the terms and provisions of the antenuptial agreement between the parties; Claimant's petition in all other respects is denied and the court finds said issues in favor of defendant-appellant estate.

"IT IS THEREFORE ORDERED AND ADJUDGED that claimant Betty LaVonne Tagtmeyer Marshall have and recover the sum of Twenty-five Thousand Dollars ($25,000.00) from the Estate of Joseph A. Marshall, Deceased, together with interest from August 3, 1973."

Appellant contends and argues that the court erred: (1) in failing to consider mutuality of consideration, that is, the relinquishment of the widow's rights on the one hand and the husband's obligation to convey a dwelling house of the parties on the other; (2) in utilizing as its sole ground that the dwelling house of the parties had not been acquired at the husband's death, and in not taking into account the construction the parties themselves put upon their contract, that is, that it was the husband's intent to acquire a home for them in addition to their previous dwelling, and in not holding that their additional home was part of the consideration intended; (3) in viewing the contract, particularly the provision for "dwelling house of the parties," retrospectively rather than prospectively as viewed by the parties when they executed the contract; (4) in not allowing equitable compensation for the value of the property understood to be the "dwelling house of the parties," as contemplated by the parties and thereby failing to take into account the equitable rights of the parties under the circumstances.

Additionally, appellant argues (1) that since mutuality of consideration is necessary to a contract, 17 Am.Jur.2d, Contracts,

Section 105, to allow only part of the expressed consideration in the attempted agreement is "not only to alter its terms but here will reduce the consideration to * * * such an extent * * * that it is questionable if such contract meets the requirements for an adequate and fair consideration * * * "; (2) that as a matter of the parties' own construction of their agreement, "it is obvious, from all the testimony, that before and after the marriage the parties planned their residence dwelling," and that such parol evidence should be utilized "to resolve an ambiguity so as to determine the true intent of the parties"; (4) that even though Mr. Marshall's "death *intervened* and made *complete performance* impossible, that fact does not prevent the court from granting relief in the nature of pecuniary compensation."

The insurmountable difficulty in all of appellant's contentions and arguments is the written antenuptial agreement between Betty LaVonne Tagtmeyer and Joseph Ayres Marshall.

■ The agreement was a valid and binding contract. This, Mrs. Marshall conceded when she sought to have it performed as opposed to having it voided or set aside. *Mathis v. Crane*, 360 Mo. 631, 230 S.W.2d 707 (1950). And under the law, such agreements are valid and binding if there is full disclosure of the nature and extent of the right waived and if that which is given to the waiving party is fair consideration under all the circumstances. § 474.220, RSMo 1969, V.A.M.S.

■ Mrs. Tagtmeyer was possessed of substantial wealth in her own right, and she and Mr. Marshall evidenced their mutual disclosures by the recitals in the agreement and the inventories of their separate properties which they made a part of their agreement. When, as thus shown in this case, the surviving spouse had full and actual knowledge of the other's means and the extent of his property, or knew facts sufficient to charge her with such knowledge, then the antenuptial contract is not void on grounds the provision for her is inadequate or disproportionate to the deceased spouse's means, or less than she would have received in absence of the agreement. *Estate of Youngblood v. Youngblood*, 457 S.W.2d 750 (Mo. banc 1970); *McQuate v. White*, 389 S.W.2d 206 (Mo.1965).

■ Mrs. Marshall failed to show that she was entitled under the antenuptial agreement to anything other or more than the $25,000 awarded her by the court. The agreement which she prayed to be enforced provided in unmistakable and unambiguous language that at the death of her husband she was to receive $25,000 and "the residence dwelling of the parties on the date of [his] death." There is evidence tending to show that the parties to the agreement contemplated establishment of a residence other than that of either party at the time the agreement was executed. However, it is beyond question that no such residence dwelling was acquired and that the residence dwelling of the parties at the time of Mr. Marshall's death was Mrs. Marshall's house in Sedalia, Missouri. Accordingly, the court awarded Mrs. Marshall all the performance that could be ordered. She received full performance in the sum provided, $25,000, and she already had the residence dwelling of the parties. Lack of a provision in the agreement which would have covered the situation as it existed upon Mr. Marshall's untimely death did not render the contract ambiguous. Where no ambiguity exists in the written agreement, the court cannot go outside the agreement and make a new contract for the parties. *Fisher v. Miceli*, 291 S.W.2d 845 (Mo.1956); *Bakelite Company v. Miller*, 372 S.W.2d 867, 876 (Mo.1963); *Ackerman v. Globe-Democrat Publishing Co.*, 368 S.W.2d 469, 479[9] (Mo.1963). The same is true with respect to equitable compensation for any value of property "understood" to be the dwelling residence of the parties. *Carr v. Lackland*, 112 Mo. 442, 20 S.W. 624 (1892).

Judgment affirmed.

All concur.