**Thomas Lee Richard HARDWICK, Appellant,**

v.

**ISC INDUSTRIES, INC. and Hardwick Manufacturing Company, Inc., Respondents.**

**No. KCD 27304.**

Missouri Court of Appeals, Kansas City District.

Aug. 30, 1976.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 12, 1976.

Clyde G. Meise, Kansas City, for appellant.

Martin J. Purcell, P. John Owen, Kenneth S. Starkey, Jr., Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, for respondents.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Action for damages for breach of contract. After jury had returned verdict in favor of plaintiff for $91,667, the trial court sustained defendants' motion for judgment

and entered judgment for defendants. Plaintiff appealed.

Appellant Thomas Lee Richard Hardwick, Ray Sims and Frozen Food Express Company were the holders of all of the stock of Hardwick Manufacturing Company. The company was incorporated in 1965 and engaged in the manufacture of heavy duty, off-highway hauling equipment.

In 1969, negotiations began between Hardwick and Gene L. Olson of ISC Industries, Inc., for the acquisition by ISC of Hardwick Manufacturing. On February 24, 1969, an Agreement for Exchange of Stock was entered into between Hardwick, Sims and Frozen Food ("Shareholders") and ISC ("Industries"). Paragraph 1 of the Agreement read:

"1. Industries agrees to offer to Shareholders in exchange for said 1,350 shares of common stock of Hardwick, 48,214 shares of common stock which is voting stock, and Shareholders agree to exchange their 1,350 shares of no par common stock of Hardwick to Industries on or before April 15, 1969. The basis of exchange for each Shareholder is set out as follows:

| "Shareholder | Hardwick | Industries |
|---|---|---|
| Thomas Lee Richard Hardwick | 676 shares | 24,143 shares |
| Ray Sims | 224 | 8,000 |
| Frozen Food Express, Inc. | 450 | 16,071 " |

Paragraph 2 dealt with patents owned by Hardwick Manufacturing ("Hardwick"). Paragraph 3 read:

"3. Industries agrees that concurrently with the exchange of stock, Hardwick will enter into an employment contract employing Thomas Lee Richard Hardwick for a period of five (5) years for an annual salary of Twenty-five Thousand Dollars ($25,000.00). The terms and covenants of such contract shall then be acceptable to Thomas Lee Richard Hardwick, Industries and their respective counsel."

The agreement and an addendum contained other provisions, none of which is here involved.

On April 24, 1969, the exchange of stock was completed. The contract of employment had not been prepared at that time and Olson told Hardwick that it would be submitted later. Some three or four weeks later, Olson presented Hardwick with a draft of a contract by the terms of which Hardwick would be employed as president of Hardwick Manufacturing for five years at an annual salary of $25,000.00. Hardwick refused to sign the contract. According to Hardwick, his refusal was based upon the absence from the contract of matters agreed upon between himself and Olson in the course of the negotiations. He specifically objected to a provision that the agreement should terminate in the event of Hardwick's death. According to Olson, Hardwick told him that he did not sign the contract because he didn't know whether or not he wanted to stay with ISC.

Hardwick acted as president and chief operating officer of Hardwick Manufacturing at a $25,000 per year salary until July 31, 1970, when he received notice that his employment was terminated. He filed this action, claiming that ISC had breached Paragraph 3 of the Agreement for Exchange of Stock and asked damages of $91,667, the amount which he would have received as salary had his employment continued for five years at $25,000 per year. His petition also contained a count for fraud, but at the trial his tendered instruction on this theory was rejected by the trial court and appellant does not now question that action.

At the trial Hardwick testified (without objection) that he was to receive for his Hardwick Manufacturing stock "twenty-five thousand per year for the next five years. I was also to receive 24,143 shares of stock." Later, when Hardwick was asked about the pre-contract negotiations with Olson, counsel for defendants objected on the grounds of the parol evidence rule. Defendants' counsel stated that he wished to offer the testimony in support of the fraud count. The trial court stated: "Well, I'm going to permit it for that limited purpose with the understanding that it only

goes to the legal interpretation to be applied to Paragraph 3 of the contract."

Hardwick then testified:

"Well, of course, the main thing [Olson represented] was the original contract and exchange of the stock, numbers of shares of stock, and the $125,000 for the five years, and in addition to those two things, there were certain insurance policies to be added to the ones that were in existence that we had. Like we had a group insurance policy before they took over and that was supposed to have been added to it. And then there were supposed to be fringe benefits, depending upon the progress of the company, as to how it would progress. The one hundred twenty-five thousand was very definitely agreed, that in case of my death, that this was to be paid, it was to be paid whether I was alive or dead, and that that was one of my definite agreements with Mr. Olson so that my wife would have that one hundred twenty-five thousand for the next five years. That was a very definite part of the program."

On cross-examination he stated that he took the position that he was entitled to receive $125,000 whether or not he worked a single day as president of Hardwick Manufacturing.

Olson, testifying for the defendants, stated that Hardwick never discussed the terms of the proposed employment contract with him and that he gave as his reason for not signing it that he did not know whether or not he wanted to stay with ISC. Olson stated that he never told Hardwick that he would be entitled to $25,000 per year for five years whether he worked or not.

An officer of another ISC subsidiary testified that Hardwick told him that he didn't sign the employment contract because he did not want to work as much as the agreement would have required.

After the jury had returned its verdict in favor of plaintiff, the trial court sustained defendants' motion for judgment. In its memorandum, the trial court stated:

"On February 24, 1969, plaintiff and defendant ISC entered into an agreement for exchange of stock. In Paragraph 3 of that document is an agreement to enter into an employment contract.

"Plaintiff was represented by counsel at the time this 'agreement' was executed. As a matter of fact, his attorney witnessed the signing of the document.

"For the purpose of this motion, let it be assumed that defendant's agents did make all the oral representations and agreements claimed by plaintiff, and that thereafter plaintiff executed the agreement of February 24, 1969, in its present terminology.

"It is perfectly evident that the parties could easily have worded Paragraph 3 of the agreement to cover all of plaintiff's assertions. Yet it remains that plaintiff executed the agreement supposedly embodying all of the terms of defendant's representations to him, and now attempts to claim that the agreement which simply and clearly speaks of an employment contract states something else.

"There is no allegation by plaintiff nor any showing or inference that fraud was perpetrated by the defendant in the execution of the agreement. Thus, the only possible conclusion is that the written agreement contains the understandings and provisions of the parties' prior arrangements.

"This Court does not believe that Paragraph 3 of the contract could, by any reasonable interpretation, state what the plaintiff claims.

"The terms are not ambiguous and no oral statements are required to explain any provisions. It obviously does not contain all fundamental and material terms to constitute an enforceable contract.

"Thus, the Court does not believe that under any circumstances could the jury return a verdict for the plaintiff that the Court could let stand. Accordingly, defendants' motion for judgment is sustained and judgment is entered for the defendants, ISC Industries, Inc. and Hardwick Manufacturing Company, Inc."

On this appeal, the contention of appellant is that the oral testimony showed that the employment of appellant for a five-year

period at annual salary of $25,000 was a part of the consideration for the stock exchange and as such appellant's right to such compensation was vested and that the oral testimony should have been considered by the trial court because its effect was to supply omissions and clarify ambiguities in the written contract.

The fundamental effect of the trial court's ruling was to find that, regardless of the prior oral representations and negotiations as testified to by appellant, the written stock exchange agreement, executed by appellant in the presence of his attorney, superseded all previous negotiations and representations and that appellant was bound by the terms of that agreement which, insofar as his employment as president of Hardwick Manufacturing Company was concerned, provided merely that such a contract would be entered into in the future.

"When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate interpretation of that contract, evidence, whether parol or otherwise, of antecedent understanding and negotiations will not be admitted for the purpose of varying or contradicting the writing." 3 Corbin on Contracts § 573, p. 357 (1960).

"Any contract, however made or evidence, can be discharged or modified by subsequent agreement of the parties. No contract whether written or oral can be varied, contradicted, or discharged by an antecedent agreement. Today may control the effect of what happened yesterday; but what happened yesterday cannot change the effect of what happens today." Id., § 574, pp. 371–372.

In this case the trial court properly held that it would permit evidence of the negotiations leading up to the written agreement as an aid in the interpretation of the written agreement. However, since the written agreement of the parties was that the employment contract would be the subject of a future contract, the court correctly refused to permit the evidence of the prior negotiations to prove a contract contrary to the terms of the written agreement.

The trial court correctly found no basis for an interpretation of the written agreement which would encompass the terms which the success of appellant's claim would require. The agreement made was to enter into a contract of employment in the future. Such an agreement is unenforceable and appellant does not contend otherwise. *Jenks v. Jenks*, 385 S.W.2d 370, 376 (Mo. App.1964).

Appellant's primary reliance in this court is upon three recent cases in which the Supreme Court permitted oral evidence to establish terms and provisions omitted from written contracts. The first case is *Modine Manufacturing Company v. Carlock*, 510 S.W.2d 462 (Mo.1974). In that case the court found what a written franchise agreement failed to cover "several matters of importance which usually and customarily inhere in the relationship between manufacturers and their representatives." 510 S.W.2d 467[5]. The court held that oral testimony was admissible in order to evidence the complete agreement of the parties "as long as that evidence is not contradictory of, repugnant to or inconsistent with the terms of the writing." 510 S.W.2d 467–468[6, 7]. That case cannot aid appellant because he seeks to provide the terms of the employment contract on the basis of the earlier negotiations, in contradiction to the terms of his agreement that such terms will be the subject of a future agreement.

In the second case, *Garden Park Homes Corporation v. Martin Marietta Corporation*, 507 S.W.2d 368 (Mo.1974), the claim of plaintiff to minimum royalty payments under a mining lease which omitted any reference to such payments was based upon oral representation coupled with a letter stating that such provision had been omitted from the written agreement for tax reasons. The court held that the written agreement would not preclude proof of the contemporaneous parol agreement to such effect inasmuch as such agreement would not have been "inherently in conflict" with the written agreement which, according to plain-

tiff's allegation, was intentionally silent on the subject. Here to permit the oral evidence relied upon by appellant to establish the terms of the employment contract would be "inherently in conflict" with the terms of the written agreement that such terms were to be the subject of a future agreement.

The third case relied upon by appellant is *Beuc v. Morrissey,* 463 S.W.2d 851 (Mo. banc 1971). In that case the court held that the silence of a written contract for architectural services as to the time for performance did not preclude extrinsic evidence of a prior oral agreement for completion of the work before a date certain. That case is an application of the rule which permits oral evidence of an express agreement to prevail over a presumption to which the law gives rise upon the silence of a written agreement. See 3 Corbin on Contracts § 593, p. 555 (1960). No such question is here presented.

The trial court correctly concluded that this was not a case in which provisions missing from a written agreement might be provided by parol evidence or in which there was an agreement with ambiguities requiring resolution by such means. It thus becomes the duty of the court to state the clear meaning of the agreement. *Commerce Trust Company v. Howard,* 429 S.W.2d 702, 705–706[1–3] (Mo.1968); *Kalen v. Steele,* 341 S.W.2d 343, 346[1–3] (Mo.App. 1960). The trial court did so and its conclusion was not erroneous. *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261 (Mo. banc 1973); *American Merchant Marine Ins. Co. v. Letton,* 9 F.2d 799 (2d Cir. 1926).

Judgment affirmed.

All concur.