Joseph GRANTHAM, Appellant,

v.

ROCKHURST UNIVERSITY, Maurice Van Ackeren and James Blumeyer, Respondents.

No. 29255.

Missouri Court of Appeals, Kansas City District.

Feb. 27, 1978.

Arthur A. Benson, II, John E. McKay, Kansas City, for appellant.

Thomas M. Sullivan, Eileen S. Sullivan, Downey, Sullivan & Fitzgerald, Kansas City, for respondents.

Before SHANGLER, P. J., WASSERSTROM, J., and MASON, Special Judge.

DONALD L. MASON, Special Judge.

Our review of this court tried case is dictated by Rule 73.01(3) as explicated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). By that case, l.c. 32, we are admonished "that the decree or judgment of the trial court will be sustained . . . unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." We affirm.

By letter contract signed May 10, 1969, Joseph M. Grantham (appellant) was hired by Rockhurst University (respondent) as assistant basketball coach, baseball coach and instructor in the Physical Education Department for the 1969–70 academic year. His contract was renewed for successive academic years; and for the 1971–72 academic year he attained the stature of Assistant Professor, which he retained throughout his remaining employment with respondent, as well as being coach. Throughout his employment appellant performed five to seven hours of classroom instruction per week, plus preparation, and the remainder of his time was expended in his coaching duties. Commencing with his letter contract dated March 14, 1971, for the 1971–72 academic year, defined portions of the Faculty Handbook dated September 1, 1970, were incorporated into that, and subsequent, contracts. On March 24, 1975, appellant signed his seventh consecutive employment contract for the academic year 1975–76. On June 4, 1975, respondent, through its academic dean, Father Blumeyer, advised appellant by letter that the contract which he signed for the 1975–76 academic year would be his terminal contract and offered him the option of tendering his resignation effective at the end of the school year or to terminate that contract either prior to the beginning of the school year or at mid-year. Appellant having failed to take affirmative action on these options within the time limits established, Father Blumeyer formally advised appellant on June 13, 1975, that the existing contract would be the terminal contract. This procedure is as prescribed by the Faculty Handbook, providing appellant had not achieved tenure, which is the apex issue for decision. Both parties fully performed under the terminal contract and no contention is made to the contrary.

On April 22, 1976, appellant filed the instant Petition for Declaratory Judgment and Injunctive Relief seeking a declaration that he had attained tenure and was thereby entitled to the benefits guaranteed to tenured faculty members. Tenure benefits include, inter alia, continued employment, except for reasons of financial exigency or discontinuance of a program or department of instruction, and then only with 12 months notice or a year's salary as severance pay. Otherwise, termination of employment could occur only as a result of specified misconduct on the part of the tenured faculty member.

Trial before the court resulted in a judgment adverse to plaintiff. For reversal appellant urges four allegations of error, each of which we will discuss. We will interpose additional facts as they are pertinent.

Three of appellant's assertions of error are interrelated, and paraphrasing them he alleges that the provision in the Faculty Handbook, incorporated into the letter contract providing for automatic tenure, was latently ambiguous in that it could have two meanings and was not defined in the contract; that the same provision was pat-

ently ambiguous in that it was contradictory to the provision in the Faculty Handbook providing for termination of contracts for non-tenured faculty; and that these ambiguities compel the construction of the contract in favor of tenure and against respondent. Appellant further asserts, in both his first and fourth allegations of error, that tenure vested on March 24, 1975, when he signed his seventh consecutive contract and respondent did not have the contractual power to thereafter unilaterally declare that contract to be his terminal contract.

These assertions require an exposition of the general rules pertaining to construction of contracts. The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties from the contract itself and to give effect to that intention. When the language of a contract is plain, there can be no construction by the court because there is nothing to construe. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261 (Mo.banc 1973); *Leggett v. Missouri State Life Insurance Company*, 342 S.W.2d 833 (Mo.banc 1961); *General Am. Life Ins. Co. v. Rogers*, 539 S.W.2d 693 (Mo.App.1976). Where the contract is clear and unambiguous, it becomes the duty of the court, as a matter of law, to state its meaning. *Commerce Trust Company v. Howard*, 429 S.W.2d 702 (Mo. 1968). Where no ambiguity exists in the written agreement, the court cannot go outside the agreement and make a new contract for the parties. *Marshall v. Estate of Marshall*, 529 S.W.2d 914 (Mo.App.1975). It is only where the contract is ambiguous and not clear that resort to extrinsic evidence to show the intent of the parties is proper so as to thereby properly construe the contract; but a contract is ambiguous only when its language is reasonably susceptible to different meanings. *Hathman, supra* and *Leggett, supra*. A contract is not rendered ambiguous by the fact that the parties do not agree upon a proper construction to be given it. *Hathman, supra*. In construing a contract the words used therein will be given their ordinary and common sense meaning and will not be construed to include meanings to which they would not

be applied by most people, *Rhoden Investment Co., Inc. v. Sears, Roebuck & Co.*, 499 S.W.2d 375 (Mo.1973); *William v. Beheler*, 499 S.W.2d 770 (Mo.1973). In construing ambiguous contracts the objective is to ascertain and render effective the mutual intent of the parties; and to achieve this objective the court will consider the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances which cast light on the intent of the parties. *Leggett, supra*; *Maschoff v. Koedding*, 439 S.W.2d 234 (Mo.App.1969); *Tri-State Gas Co. v. Kansas City Southern Railway Co.*, 484 S.W.2d 252 (Mo.1972), so long as that evidence is not contradictory of, repugnant to, or inconsistent with the terms of the contract. *Modine Manufacturing Company v. Carlock*, 510 S.W.2d 462 (Mo.1974). It is only when the contract is ambiguous, and extrinsic evidence is proper, that construction of the agreement is for the jury under proper instructions from the court. *Commerce Trust Company, supra*. This general law of contracts applies in the construction of teachers' contracts. *Adamick v. Ferguson-Florissant School District*, 483 S.W.2d 629 (Mo.App.1972).

It is appellant's initial contention that the phrase "after seven years of service" is latently ambiguous as it is not defined in the contract and is susceptible to two reasonable meanings, i. e. that tenure vested on March 24, 1975, when appellant signed his seventh consecutive contract, subject only to the completion of that contract without a breach on his part; or that the actual completion of seven years of employment was required before tenure could attach. The questioned phrase was used in the context that the respondent recognized "the principle that after seven years of service at the rank of full time Instructor or Assistant Professor tenure is automatically acquired." In this context "after" is a preposition and is variously

defined in Webster's Third New International Dictionary (1971 Edition) as "behind in place or time," "later than a particular time or period of time," "following the expiration of," and "subsequent to." These are the plain, common sense and ordinary meanings to the word "after;" and when attached to the words "seven years," obviously connotes after the expiration of seven years or subsequent to a seven year period. As a preposition, "after" is one of the most used words in the English language and has a readily acceptable meaning, without mystique, which does not require definition. To apply the meaning urged by appellant would require that we attach a meaning not commonly used by most people and also overlook that it is appellant's burden, which he did not sustain, to prove that the parties intended a special meaning to this common, ordinary word. *Rhoden Investment Co., Inc., supra.* This we will not do. We consider these words to be plain, clear and unambiguous and not in need of construction arising out of extrinsic evidence bearing on the intention of the parties. *Kalen v. Steele,* 341 S.W.2d 343 (Mo.App.1960). It is clear from the language used, and unambiguous, that tenure could not attach until acceptance of the eighth consecutive teaching contract.

Turning our attention to appellant's contention that that same phrase is patently ambiguous as it is contradictory to other provisions in the Faculty Handbook, we deem that assertion likewise without merit. This alleged contradiction and patent ambiguity arises from the contractual right of the respondent to terminate appellant's contract prior to September 1, 1975, preceding the terminal date of the 1975–76 academic year contract. The Faculty Handbook, as incorporated into the letter contract, provides that respondent will give notice to the faculty member, not later than March 15th, of the rank and salary to be offered for the subsequent academic year. This is done via the letter contract. In the same paragraph it is provided that respondent must give official notice of termination, in writing, at least by September 1st preceding the terminal date of the current contract. This paragraph was applicable to non-tenured faculty (appellant). As noted above, other provisions for termination were applicable to tenured faculty.

Read together, as we must do, these provisions do not contradict and are not ambiguous and the intent of the parties can be readily discerned from the document itself. *Hathman, supra.* We have earlier discussed the phrase "after seven years of service" and determined it is not ambiguous. It is not necessary to expand that discussion, or change our determination, when that phrase is considered with the provisions pertaining to termination. The provisions are obviously for the benefit of both parties and readily understandable and not contradictory. If the faculty member does not receive a termination notice prior to September 1st, he is assured of being offered a teaching contract, before March 15th of the succeeding year, for the next academic year, and thereby assured of employment through commencement, some fourteen months later. Having signed that academic year contract, his employment must continue for the remainder of that academic year, even though respondent might choose, at some time prior to September 1st, to terminate that employment at the end of that academic year. At the very least the faculty member would know more than eight months in advance that he was going to be unemployed. By offering the contracts before March 15th the University will know whether the faculty member will sign the contract and accept the terms and conditions offered and thereby ascertain, some six months in advance, its faculty recruiting requirements for the coming academic year. If the non-tenured faculty member wants to terminate his relationship with the University at the end of the academic year, he need only return the offered contract unsigned. For the University to terminate the relationship notice must be given before September 1st; and upon the failure to do so, a contract for the subsequent academic year must be offered. This is a reasonable intendment of the parties and to give a different effect to this lan-

guage would lead to detrimental results for both parties. Without this, or comparable language and schedule, neither party would have advance knowledge as to the intention of the other party for the subsequent academic year. The faculty member could find himself unemployed at the end of the academic year and the University could be without sufficient faculty at the beginning of the academic year, both parties without sufficient notice to take corrective action. These provisions are not contradictory or patently ambiguous and the intention of the parties can be readily discerned from the contract itself, thereby negating the necessity for the introduction of extrinsic evidence to prove that intent. *Hardwick v. ISC Industries, Inc.,* 542 S.W.2d 302 (Mo. App.1976).

■ The cornerstone of appellant's preceding argument, and as his fourth charge of trial court error, is that appellant achieved tenure status when he signed his seventh consecutive contract on March 24, 1975, subject only to successful completion of that contract without breach by him, and therefore, he could not be terminated and the provisions for termination discussed above are thereby contradictory. As previously stated, the challenged phrases are not contradictory or ambiguous. When read separately and together, the intent of the contracting parties can be determined and declared. Appellant's contentions that he achieved tenure status when he signed his seventh consecutive contract on March 24, 1975, is without merit. To sustain this contention it would be necessary for the court to rewrite the contract, which we cannot do, *Marshall, supra,* and to hold that appellant obtained tenure after five years and ten months when the contract clearly provides that tenure cannot be attained until "after seven years of service." Respondent's termination of appellant's contract was within its contractual rights and in conformance with the provisions of that contract.

As a corollary argument, appellant urges that the respondent's evidence supports his contention that he obtained tenure on March 24, 1975, upon the execution of his final contract. This argument is fallacious for four reasons. First, that supportive evidence is not found in the transcript. Secondly, an ambiguity cannot be created by the unilateral assertion of one party or by the fact that the parties do not agree on the construction to be given the contract. *Hathman, supra; Mickelberry's Food Products Co. v. Haeussermann,* 247 S.W.2d 731 (Mo.1952). Thirdly, it is the duty of the trial judge to determine as a matter of law whether the contract is ambiguous; and if not, to declare the intention of the parties. *Commerce Trust Co., supra; Hardwick, supra.* Fourth, extrinsic evidence should not have been received by the trial court inasmuch as the contract does not contain the charged ambiguities. *Hathman, supra.*

■ Also corollary to appellant's assertions of contract ambiguities is that the contract must be construed against its author, the respondent. This assertion can be summarily answered by the declaration of established law that the courts do not construe a contract that is free of the charged ambiguities, but merely declare the intention of the contracting parties, *Willman, supra;* and it is only when a contract is ambiguous that it is construed against its author. *Hinkeldey v. Cities Service Oil Company,* 470 S.W.2d 494 (Mo.1971).

We have discussed and ruled on all issues raised by appellant. We have also studied each and all of the cases relied on by appellant, many of them from other jurisdictions, and do not find them supportive to appellant's position or contradictory to the result herein reached.

The trial court ruled correctly in its disposition of this case and that judgment is affirmed.

All concur.